**CPR (USA) Inc., Plaintiff,**

**CPR, Plaintiff–Appellant,**

v.

**Philip R. SPRAY, Defendant–Appellee.**

**No. 1472, Docket 98–7922.**

United States Court of Appeals, Second Circuit.

Argued: May 20, 1999

Decided: Aug. 11, 1999

Jayne S. Robinson, New York, N.Y. (K. Ann McDonald, Robinson Murphy & McDonald, on the brief), for Plaintiff–Appellant.

Jack B. Gordon, Washington, DC (Fried, Frank, Harris, Shriver & Jacobson, on the brief), for Defendant–Appellee.

Before: CARDAMONE and JACOBS, Circuit Judges, and McMAHON, District Judge.*

McMAHON, District Judge:

Plaintiff-appellant CPR appeals from an order entered in the United States District Court for the Southern District of New York (Patterson, J.) to the extent that the court denied CPR's motion to stay arbitration and granted the cross-motion of defendant-appellee Philip R. Spray ("Spray") to compel arbitration of a dispute concerning a written agreement entered into by CPR and Spray in September 1989 (the "Agreement"). The district court dismissed CPR's claims for declaratory and monetary relief for lack of personal jurisdiction over Spray and held that the parties' dispute over the interpretation of the Agreement was arbitrable. Spray moves to dismiss CPR's appeal for lack of appellate jurisdiction, contending that the district court order is not appealable at this time because it was entered in the course of an "embedded" proceeding. *See Filanto, S.p.A. v. Chilewich International Corp.,* 984 F.2d 58, 60–61 (2d Cir.1993). We deny Spray's motion and affirm the underlying order compelling arbitration, albeit for a reason different than that relied on by the district court.

## I. Background

CPR is a French banking and asset management company which decided in 1989 to enter the United States market in proprietary trading, money management, and other financial services. CPR hired Spray to build and manage a new "enterprise business," CPR (USA) Inc. (referred to occasionally herein as the "Subsidiary"), that was formed for the purpose of carrying out these activities. Spray and CPR entered into the Agreement on or about September 1, 1989. Under the Agreement, CPR promised to provide $10 million of initial capital for the new business, to arrange lines of credit for the Subsidiary, and to cause the hiring of trading and portfolio management professionals and support staff acceptable to Spray.

The focus of the Agreement is the terms and benefits of Spray's initial employment by the Subsidiary. In Article II of the Agreement, CPR agreed to cause the Subsidiary to employ Spray for a "Period of Employment." Article III defines the term "Period of Employment" as a five-year period commencing on September 1, 1989. Articles IV and V set forth Spray's duties and compensation as an "Employee" of the planned Subsidiary. Under Article IV, CPR agreed to employ Spray as chief executive officer of the Subsidiary and Spray agreed to devote his "best efforts" to management of the enterprise business. CPR agreed in Article V to compensate Spray for his efforts by paying him an annual salary of $200,000, as well as a guaranteed bonus of $100,000 at the end of each of the first two years of the Period of Employment.

* The Honorable Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

In Article VI, CPR agreed to establish a "Special Bonus Pool" equal to 25% of the Subsidiary's "Going Concern Value" (subject to certain limits). The Special Bonus Pool was payable to Spray and to the Subsidiary's trading and portfolio management professionals under certain defined circumstances, as set forth in section 6.6. The interpretation of that section forms the crux of the underlying dispute. Unfortunately, as all parties concede, section 6.6 is far from a model of contractual draftsmanship. Therein lies the difficulty.

The section provides that Spray would be entitled to payment from the Special Bonus Pool under three sets of circumstances: First, subsection 6.6(a) reads:

Under the circumstances provided for in Section 8.6 and 8.7 of this Agreement and on the retirement of Employee after reaching 62 years if Employee is then employed by Employer, provided if entitlement under Section 8.7 is predicated on an event described in Section 8.4(d), then Employee may elect to receive his share of the Special Bonus Pool without terminating his employment.[1]

Section 8.6, which is referred to in subsection 6.6(a), but which is not pertinent to this case, entitles Spray to a Special Bonus payment in the event the Period of Employment is terminated by CPR because of his disability or death. Section 8.7, the other clause referred to in subsection 6.6(a), may be relevant, since it deals with Spray's rights in the event of termination by him for good reason or termination of him by the Subsidiary without cause. It provides, in pertinent part, as follows: [2]

*Rights of Employee in the Event of Termination by Employee for Good Reason or Termination of Employee by Employer Without Cause.* If Employee should terminate the Period of Employment for Good Reason or Employer should terminate Employee without

Cause, CPR shall cause Employer to . . .

(c) pay to Employee his share of the Special Bonus Pool calculated through the date of termination, as provided for in ARTICLE VI, and payable within 30 days from the required calculation which shall be made with all commercial promptness. . . .

To summarize, under subsection 6.6(a), Spray was entitled to payment from the Special Bonus Pool prior to the end of the Period of Employment upon early termination by him for "good reason," or upon the Subsidiary's termination of Spray's employment either without cause or following Spray's death or disability. If Spray were to remain employed by CPR's Subsidiary through age 62, subsection 6.6(a) would also entitle him to payment from the Special Bonus Pool upon his subsequent retirement.

Subsection 6.6(b) describes the second situation in which CPR would be required to make a Special Bonus Pool pay-out to Spray:

In the event at the end of the Period of Employment, Employer does not offer Employee continued employment on terms no less favorable than those provided for in this Agreement.

CPR did not offer Spray a contract at the end of the Period of Employment, but he continued to perform the same job for CPR's Subsidiary with the same salary and benefits. The parties disagree over whether the absence of a contract for a fixed term after 1994 meant that Spray was not offered continued employment on terms no less favorable than those provided in the Agreement.

Finally, subsection 6.6(c) sets forth the remaining circumstance in which Spray would be entitled to receive payment from the Special Bonus Pool:

---

**1.** The Agreement refers to Spray as the "Employee" and to CPR's Subsidiary as the "Employer."

**2.** The full text of section 8.7 is reproduced in the Appendix to this opinion.

At a time designated by Employee or in the event at the end of the Period of Employment Employee declines Employer's offer of continued employment on terms no less favorable than those provided for in this Agreement, provided that in either such case the Special Bonus shall, if elected by Employer within 20 days of Employee's designation or declination, by notice to Employee, be payable in three yearly installments the first such installment to be an amount equal to ⅓ of the Special Bonus that would be payable to Employee if Employer did not make such election and payable 30 days following Employee's designation or declination, the second ⅓ calculated as if Employee had made his designation or declination under this Section 6.6(c) one year after the date of his original designation or declination and payable 30 days after the first anniversary of such original designation or declination, and the third ⅓ calculated as if Employee had made his designation or declination under this Section 6.6(c) two years after the date of his original designation or declination and payable 30 days from the second anniversary of such original designation or declination, provided that to receive the portion of the Special Bonus Pool receivable after the first ⅓, Employee may be required by Employer to be employed by Employer at the time payment is to be made unless Employer has terminated Employee without Cause or Employees [*sic*] has terminated his employment for Good Reason, each as defined in ARTICLE VIII. If due to Employer's election, employment shall continue beyond the Period of Employment, it shall be offered to Employee on the terms provided for in this Agreement.

The parties hotly dispute the meaning of subsection 6.6(c), but it clearly gives Spray an additional right to receive a Special Bonus payment under circumstances other than those specified in subsections 6.6(a) and (b), while giving CPR the right to spread payment over two years.

The Agreement contains a broad arbitration clause, found at Article IX, section 9.3. It provides:

> Any controversy or claim arising out of or relating to this Agreement, or any difference as to the interpretation or performance of any of the provisions of this Agreement shall be settled by arbitration in the County of New York, State of New York in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA") then in effect....

Section 9.3 also contains a special arbitration provision to take effect if the "dispute concerns a determination with respect to the Special Bonus Pool." In such a case, the Agreement instructs the AAA to appoint as arbitrator "a firm qualified to evaluate Going Concern Value having no relationship with CPR, Employer, Employee or their affiliates to determine such dispute."

As noted above, at the conclusion of the Period of Employment in September 1994, Spray was not offered a contract extension or a new contract. However, he remained principal manager of the Subsidiary on an at-will basis for two and one-half years, until February 27, 1997, when CPR terminated his employment. CPR indicated that it was dissatisfied with Spray's performance. The district court concluded that Spray was terminated "without cause" and CPR does not dispute that finding.[3]

---

**3.** Article VIII, section 8.2 of the Agreement defines "cause" for termination as follows: (a) An act or omission by Employee which constitutes a material breach by Employee of this Agreement; (b) conviction of Employee for a crime, no longer subject to appeal, involving fraud, embezzlement or for a felony, involving similar moral turpi-

tude; (c) Employee's willful violation of specific written directions from Employer (which directions must be lawful, given in good faith and not inconsistent with the provisions of this Agreement or the goals of the Employer); (d) the inability of Employee to perform Employee's customary duties for a period of six months or more due to a

CPR gave Spray a letter dated March 10, 1997, stating that Spray would remain on the Subsidiary's payroll as an employee until August 10, 1997, in return for a release of all claims against CPR and its Subsidiary. The letter made no particular provision for any rights Spray had to payment from the Special Bonus Pool. Spray declined to sign the release and, on July 31, 1997, he filed a demand for arbitration against CPR in New York, seeking payments allegedly due him out of the Special Bonus Pool. In his AAA Claim for Relief, Spray asserted that he was entitled to payment of the Special Bonus Pool because CPR and the Subsidiary had terminated him without cause and because subsection 6.6(c) of the Agreement entitled him to payment from the Special Bonus Pool at any time designated by him. Spray contends that the Special Bonus Pool was worth millions of dollars as of the termination of his employment on February 27, 1997, the valuation date he advocates.

In response to Spray's demand for arbitration, CPR and CPR (USA) Inc. commenced a suit in the United States District Court for the Southern District of New York and moved to stay the AAA proceeding. CPR contended that the Agreement had expired in 1994, at the conclusion of the Period of Employment, so the controversy was no longer arbitrable. CPR and its Subsidiary also sought a declaration that they were not liable and owed no bonus or compensation to Spray. Finally, they asserted claims against Spray for breach of contract and unjust enrichment, and demanded that Spray make restitution of $139,857 in severance payments that CPR (USA) Inc. had previously provided.

Spray opposed the motion to stay arbitration and cross-moved to compel arbitration of CPR's claims concerning the Special Bonus Pool. Spray also moved to dismiss CPR's and CPR (USA) Inc.'s other claims, asserting that, as a domiciliary of Maryland who neither resides in nor owns property in New York, he was not subject either to personal jurisdiction pursuant to N.Y. C.P.L.R. 301 (McKinney 1990) or to the court's long-arm jurisdiction, under N.Y. C.P.L.R. 302 (McKinney 1990).

The district court dismissed CPR's and CPR (USA) Inc.'s claims for lack of personal jurisdiction. CPR has not appealed this determination.

The district court also denied the plaintiffs' motion to stay arbitration and granted Spray's cross-motion to compel arbitration. Rejecting plaintiffs' argument that the expiration of the Period of Employment precluded arbitration, the trial judge noted that the Agreement did not include a termination date or indicate that it was bounded by the Period of Employment's term of five years. However, instead of resolving whether the parties had agreed to arbitrate disputes involving the Special Bonus Pool that arose after the end of the Period of Employment, the district court ruled that the threshold question of whether the instant controversy or claim arose out of the Agreement involved a "dispute over the interpretation of the Agreement which the Agreement provides should be determined by arbitration."

CPR appealed. It contends that the district court erred when it concluded that the Agreement's arbitration clause governed the instant dispute. Spray countered by moving to dismiss CPR's appeal, arguing that we do not have jurisdiction because the order compelling arbitration was entered in an embedded proceeding. If, however, we reach the merits, Spray contends that the district court properly

regulatory suspension, order or injunction; (e) failure of Employer to earn a 20% return on Capital but not on Capital in excess of $100,000,000, in its Third Year which shall be determined by dividing the Capital for the first fiscal year of Employer which begins after the end of the second year of the Period of Employment by the Annual Marked to Market Net Income of Employer for such fiscal year; or (f) the representation made by Employee in Section 9.12(a) was not true when made.

concluded that this dispute must be resolved by an arbitrator.

## II. Discussion

### A. *Jurisdiction over the Appeal*

■ The procedural posture in which a question of arbitrability arises determines whether an immediate appeal can be taken from an order compelling arbitration. As this Court observed in *Filanto, S.p.A. v. Chilewich International Corp.*, when Congress added a new provision to the Federal Arbitration Act ("FAA") in 1988 to govern appeals of orders concerning arbitration, "it endeavored to promote appeals from orders barring arbitration and limit appeals from orders directing arbitration." 984 F.2d at 60; *see also* Pub.L. No. 100–102, tit. X, § 1019(a), 102 Stat. 4642, 4670–71 (1988), *codified at* 9 U.S.C. § 16 (1994). Thus, if the suit in which the question of arbitrability arises is "independent"—that is, if the plaintiff seeks an order compelling or prohibiting arbitration or a declaration that a dispute is arbitrable or not arbitrable, and no party seeks any other relief—then a final judgment compelling arbitration ends the litigation and is appealable at once. *See Filanto*, 984 F.2d at 60; *see also Ermenegildo Zegna Corp. v. Zegna*, 133 F.3d 177, 181 (2d Cir.1998); FAA, 9 U.S.C. § 16.[4] In such a case, if arbitration is ordered, the party opposing it need not await the outcome of the arbitration before challenging the order. *See Filanto*, 984 F.2d at 60.

On the other hand, if the application to compel arbitration is "embedded" in a broader action—an action in which one party or the other seeks some relief other than an order requiring or prohibiting arbitration (typically some relief concerning the merits of the allegedly arbitrable dispute)—then orders *denying* arbitration are immediately appealable but orders *directing* arbitration are not immediately appealable. *See id.; see also Zegna*, 133 F.3d at 181; 9 U.S.C. § 16.[5] When arbitration is compelled in an "embedded" action, the party opposing the arbitration cannot challenge the court's decision to send the matter to an arbitrator until after the arbitration has occurred and its result is available for challenge on a motion to confirm or to vacate the award. Thus "with respect to embedded actions, the party opposing arbitration must bear the initial consequence of an erroneous district court decision requiring arbitration." *Filanto*, 984 F.2d at 61.

■ Spray argues that the district court's order is not immediately appealable because it was entered in an "embedded" proceeding—a proceeding in which CPR initially sought damages and declaratory relief in addition to a stay of arbitration. CPR counters that this is an "independent" suit—even though CPR itself initially sought relief in addition to a stay—because the trial judge dismissed all claims except the application for a stay, on juris-

---

**4.** Subsection 16(a) provides:

An appeal may be taken from—
(1) an order—
(A) refusing a stay of any action under section 3 of this title,
(B) denying a petition under section 4 of this title to order arbitration to proceed,
(C) denying an application under section 206 of this title to compel arbitration,
(D) confirming or denying confirmation of an award or partial award, or
(E) modifying, correcting, or vacating an award;
(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

**5.** Subsection 16(b) provides:

Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
(1) granting a stay of any action under section 3 of this title;
(2) directing arbitration to proceed under section 4 of this title;
(3) compelling arbitration under section 206 of this title; or
(4) refusing to enjoin an arbitration that is subject to this title.

dictional grounds, and directed entry of a final judgment dismissing CPR's complaint.

■ This case is somewhat unusual, in that the application for a stay of arbitration was initially embedded, but in a lawsuit over which the district court had no jurisdiction. We hold that an immediate appeal from an order compelling arbitration lies in that circumstance.

■ Spray argues that we must look to the moment when the pleadings were filed to determine whether the motion to stay arbitration was embedded in another proceeding. At that moment, CPR's application was unquestionably embedded. However, the logic behind identifying a proceeding as "embedded" or "independent" follows from the rule that this Court does not ordinarily entertain appeals from non-final orders. If, following entry of an order compelling arbitration, independent substantive questions for decision (*i.e.,* questions other than those relating to the arbitral award itself) remain before the district court, then the order compelling arbitration is effectively interlocutory, and consideration of its validity by this Court would be premature. On the other hand, if the district court, having ordered the parties to arbitrate, has no independent substantive issue left before it—only issues relating to the validity of the arbitrator's award—then the order compelling arbitration is, effectively, a final order and an immediate appeal will be proper. Given this, we cannot ignore the fact that CPR's stay application was "embedded" in an ephemeral action.

In this case, the district court has no independent substantive issue remaining after arbitration because it has no jurisdiction over one of the parties to the litigation. The only jurisdiction the trial court ever had over CPR's additional claims for declaratory and monetary relief was jurisdiction to decide that it had no power to decide the claims. They were not properly before it, and the district judge correctly

dismissed them. It strains logic to craft a rule that "embeds" a motion to stay or compel arbitration in an action that the district court is powerless to entertain, and we decline to do so.

■ Spray argues that we should view the district court's order dismissing all of CPR's claims as an order staying the claim that was sent to arbitration (*i.e.,* the claim for declaratory relief concerning the Special Bonus Pool). Spray contends that this result is required by 9 U.S.C. § 3 (1994), which directs a district court that enters an order compelling arbitration to stay (not dismiss) proceedings in an action whose subject matter is arbitrable until the arbitration has been held in accordance with the terms of the agreement.

■ Spray is correct that § 3 directs the district court, when referring claims to arbitration, to stay the underlying action and retain limited jurisdiction over post-arbitration proceedings. But, in this particular case, where the district court has no jurisdiction over the underlying action, the effect of a § 3 stay is merely to preserve the limited continuing jurisdiction that every district court has over a matter that is referred to arbitration—that is, jurisdiction to enter, modify, or vacate (on non-substantive grounds) the arbitration award, pursuant to 9 U.S.C. §§ 9, 10, or 11 (1994). The district court enjoys this limited, post-arbitral jurisdiction over the award, regardless of whether the original stay application was embedded or independent. If this limited exercise of continuing jurisdiction were sufficient to render a proceeding "embedded" and prevent an appeal, then *every* motion to stay an arbitration would give rise to an unappealable order. Such an outcome would be at odds with the FAA and this Court's prior rulings.

Finally, Spray argues that relief should be limited to vacating the dismissal, reinstating the complaint, and declining to review the order directing arbitration at this stage of the proceedings. This Court has

previously suggested, in *dicta*, that such an approach *might* be appropriate—at least when a plaintiff brings suit under a contract containing an arbitration clause, the defendant responds with a motion to stay the proceedings pending arbitration, and the district court, having concluded that the parties made an agreement to arbitrate, erroneously dismisses the complaint, rather than staying proceedings under 9 U.S.C. § 3. *See Filanto,* 984 F.2d at 60 n. 3. However, the unusual procedural background of this case makes the approach considered in *Filanto* inappropriate. In the case before us, Spray did not bring a lawsuit in the first instance; he noticed an arbitration of his Special Bonus Pool claim. CPR responded in court with a motion to *stay* the arbitration, accompanied by its own claims for relief. The district court found that it never had jurisdiction to decide CPR's additional claims. All parties concede that the trial judge's decision in this regard was correct. He therefore dismissed the claims—which is the only proper course when a court lacks the power to hear them. This left the district court a proceeding seeking but one form of relief—an order staying arbitration—which it denied.

Accordingly, we hold that, under the procedural circumstances of this case, the remedy described in *Filanto*'s *dicta* does not provide the appropriate relief. Rather, the trial judge, in assessing the jurisdictional posture *after* dismissing CPR's jurisdictionally defective claims, properly issued a final order dismissing CPR's application to stay the arbitration. We find that we have jurisdiction to consider CPR's appeal from that dismissal.

### B. *The Merits of the District Court Order*

 This Court reviews *de novo* a district court's determination that a dispute is arbitrable, *see National Ass'n of Broadcast Employees & Technicians v. American Broadcasting Co.,* 140 F.3d 459, 461 (2d Cir.1998), *cert. den.,* ── U.S. ──,

119 S.Ct. 800, 142 L.Ed.2d 661 (1999), and we generally resolve such cases in favor of arbitration. *See id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The existence of a broad agreement to arbitrate, such as section 9.3 of the Agreement, creates a presumption of arbitrability, which is overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir.1997) (internal quotation marks omitted); *see also Collins & Aikman Products Co. v. Building Systems, Inc.,* 58 F.3d 16, 20 (2d Cir.1995) ("'[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

CPR concedes that it is a party to the Agreement and that the Agreement contains a valid and enforceable arbitration clause at section 9.3. However, it argues that the Agreement expired at the end of the five-year Period of Employment, and that CPR's obligation to arbitrate ceased with it. Citing *Litton Fin. Printing v. NLRB,* 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991), CPR asserts that the district court erred when it held that the arbitration clause required arbitration of a dispute over the Agreement's interpretation without determining whether the instant claim arose out of the Agreement.

Spray counters that, even though the Period of Employment has concluded, Spray's rights under the Agreement to a pay-out from the Special Bonus Pool arise under provisions of the Agreement, and that these rights survive the ending of that time period. Spray also contends that any dispute over whether the Agreement has expired is a question to be decided by an arbitrator, not by the district court.

CPR and Spray are each partially correct.

The governing law was set forth by the United States Supreme Court in *Litton*. In that case, a check printing plant operator ("Litton") entered into a collective bargaining agreement with the union representing Litton's production employees (the "Union") requiring, in pertinent part, that all differences as to contract construction or violations be determined by arbitration, and that employee grievances that could not be resolved under a two-step grievance procedure be submitted for binding arbitration. The agreement expired in October 1979, whereupon Litton laid off ten of its plant workers without notice to the Union. The Union then filed grievances on behalf of the laid-off employees. Litton refused to submit to the grievance or arbitration procedures, a position the National Labor Relations Board ("NLRB") later interpreted as a refusal to arbitrate under any circumstances. The NLRB held that Litton's refusal to process the grievances and unilateral refusal to arbitrate were unfair labor practices, in violation of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5). But, the NLRB found that disputes concerning the actual post-expiration layoffs did not "arise under" the expired contract and, hence, were not arbitrable. *See Litton*, 501 U.S. at 194–96, 111 S.Ct. 2215.

Both Litton and the Union appealed aspects of the NLRB's order to the Ninth Circuit, and Litton eventually petitioned for a writ of certiorari. The Supreme Court granted review solely with respect to the question of arbitrability of the layoff grievances. *See id.* at 197–98, 111 S.Ct. 2215. It ultimately ruled that the layoff dispute did not arise under, and consequently was not covered by, the expired agreement. *See id.* at 209–10, 111 S.Ct. 2215. However, in reaching its conclusion, the *Litton* Court reiterated support for the holding in *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), in which the Court found a pre-sumption in favor of post-expiration arbitration of matters and disputes "arising out of the relation governed by the contract." *Litton*, 501 U.S. at 204, 111 S.Ct. 2215. The *Litton* Court explained that post-expiration grievances arise under the contract, and are therefore arbitrable: (1) when the dispute "involves facts and occurrences that arose before expiration;" (2) when post-expiration action "infringes a right that accrued or vested under the agreement;" or (3) when "under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 206, 111 S.Ct. 2215.

The *Litton* Court specifically instructed lower courts faced with post-expiration disputes to determine whether parties had agreed to arbitrate these disputes—*i.e.*, to determine arbitrability—even if that analysis requires the court to interpret the arbitration agreement, a task normally remitted to an arbitrator under a broad arbitration clause. *See id.* at 208–09, 111 S.Ct. 2215. Thus, CPR is correct that the district court compelled arbitration on an improper basis. Despite the broad arbitration clause in the Agreement, the fact that this dispute arose after the Period of Employment had expired meant that the district court should have decided whether the parties had agreed to arbitrate it in those circumstances. The trial judge's approach below was rejected by the *Litton* Court when it announced that the courts "must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement." *Id.* at 209, 111 S.Ct. 2215.

But CPR is not correct in asserting that the district court should have granted a stay of arbitration. The agreement between CPR and Spray supports a construction that preserves a continuing right to arbitration. It contains a specific provision calling for the arbitration of disputes over the amount due Spray under

the Special Bonus Pool. Indeed, the Agreement's arbitration clause specifies that the arbitrator must have expertise in evaluating Going Concern Value "if the dispute concerns a determination with respect to the Special Bonus Pool."

At present, the parties do not agree on that amount because they do not agree which contractual provision covers the valuation question. Spray contends that it is Article VI, § 6.6(a), referencing Article VIII, § 8.7, which gave Spray the right to payment when he was terminated without cause in February 1997. CPR (which conceded at oral argument that Spray has the right to *some* Special Bonus Pool payment) relies on Article VI, § 6.6(b), which provided for payment in the event that Spray did not receive a new contract offer from CPR at the end of the Period of Employment. CPR argues that because Spray did not receive a new contract in September 1994, the amount of his Special Bonus Pool payment should be calculated as of that date.

Whichever party is correct, everyone agrees that Spray is entitled to something from the Special Bonus Pool under the plain terms of the Agreement. And under either side's scenario, Spray's right to payment from the Special Bonus Pool arises under the contract. Since the Agreement expressly contemplates arbitration in the event of a dispute over the amount due under the Special Bonus Pool, and since there is such a dispute, arbitration is compelled *whether or not the Agreement expired in 1994*.

Of course, in discharging his duties, the arbitrator will have to decide whether Article VIII, § 8.7 or Article VI, § 6.6(b) applies to Spray's situation. This will require the arbitrator to determine whether the otherwise valid contract has expired. But in this Circuit, we remit that question to the arbitrator, even after *Litton.* *See, e.g., Abram Landau Real Estate v. Bevona,* 123 F.3d 69, 73 (2d Cir.1997).

"Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision ... disputes over these matters should be submitted to arbitration." *Id.* at 73. Whether or not the Agreement expired in 1994, it cannot be denied that CPR and Spray had a valid contract in which they agreed to send to an arbitrator disputes involving amounts due Spray from the Special Bonus Pool. Therefore, the district court was correct to deny CPR's motion to stay arbitration and to grant Spray's cross-motion to compel arbitration in the instant dispute.

## III. Conclusion

Based on the foregoing, we deny Spray's motion to dismiss for lack of appellate jurisdiction and we affirm the district court order dismissing CPR's motion to stay arbitration and granting Spray's cross-motion to compel arbitration.

### *Appendix*

**Section 8.7:**

*Rights of Employee in the Event of Termination by Employee for Good Reason or Termination of Employee by Employer Without Cause.* If Employee should terminate the period of Employment for Good Reason or Employer should terminate Employee without Cause, CPR shall cause Employer to:

(a) Pay to Employee within 30 days thereafter Employee's Base Annual Salary for years and months then remaining in the Period of Employment without discount and any amount provided for in Section 5.2(a) and not yet paid to Employee, the parties agreeing that such lump sum is to compensate Employee for the dislocation and expenses attributable thereto and is not intended as a penalty;

(b) pay to Employee his share of the Bonus Pool calculated through the date of termination as provided for in Sections 5.2(b) and 5.3, within 30 days from

the required calculation which shall be made with all commercial promptness;

(c) pay to Employee his share of the Special Bonus Pool calculated through the date of termination, as provided for in Article VI, and payable within 30 days from the required calculation which shall be made with all commercial promptness; and,

(d) provide for Employee the continuation or conversion of Employee Benefit Plans as if termination had occurred under Section 8.5.

Employee's sole remedy against Employer or CPR in the event Employee terminates his employment for Good Reason or Employer has terminated Employee without Cause, for compensation due to the inability of Employee to complete the full Period of Employment shall be to receive the payments and benefits provided for above in this Section 8.7 and neither Employer or CPR shall be subject to any penalty by virtue of the inability of Employee to complete the full Period of Employment by virtue of such termination.