Raglan GEORGE, Jr., As Executive Director of District Council 1707, American Federation of State, County, and Municipal Employees, AFL–CIO, Plaintiff–Appellant,

v.

Josephine LeBEAU, Defendant–Appellee.

Docket No. 05–4241–CV.

United States Court of Appeals, Second Circuit.

Argued: April 20, 2006.

Decided: July 10, 2006.

As Amended Sept. 8, 2006.

Thomas M. Murray, Kennedy, Jennik and Murray P.C., New York, NY, for Appellant.

Rachel S. Rothschild, Ballon Stoll Bader & Nadler P.C., New York, NY, for Appellee.

Before WALKER, Chief Judge, JACOBS and WALLACE, Circuit Judges.*

WALLACE, Circuit Judge.

Raglan George, the Executive Director of District Council 1707 labor union (DC 1707), appeals from the district court's denial of his motion for a stay of arbitration. The demand for arbitration was filed by Josephine LeBeau, the Executive Director of DC 1707 prior to George. We have jurisdiction pursuant to 9 U.S.C. § 16(a), and we affirm.

## BACKGROUND

In 1994, the Executive Board of DC 1707 elected Josephine LeBeau as Executive Director. She accepted the position and entered into an employment agreement with DC 1707 in June 1995. [A 42.] The contract, which expired by its terms in May 1996, provided for severance and other benefits. It also included an arbitration clause, requiring the parties "to submit any dispute that may arise under th[e] Agreement or as to the meaning or application thereof to final and binding arbitration under the ... rules of the American Arbitration Association." [A 44–45.] The arbitration clause provided that the costs of arbitration, including legal costs, would be paid by DC 1707. [A 45.] The parties also expressly waived any right to submit any dispute under the Agreement to any court.

In May 1996, LeBeau and the new executive board were sworn in for a new term of office. Although LeBeau's employment contract expired at this time, she and DC 1707 never negotiated a new contract. She was the Executive Director until May 7, 2002, when she lost the election to George.

LeBeau then made a demand for severance benefits under the employment contract. On September 24, 2004, her counsel served a demand for arbitration on DC 1707's counsel, claiming an entitlement to $316,679.80. In response, DC 1707 filed suit in the district court. [A 5.] DC 1707 alleged that LeBeau's employment relationship was governed by a union constitution and thus came under the Labor Management Relations Act, 29 U.S.C. § 185. Further, DC 1707 sought a stay of arbitration, a declaration that LeBeau's employment contract had expired, and a determination that she was not entitled to severance benefits.

The district court denied the motion to stay arbitration, holding that LeBeau's continued employment created a presumption that her initial contract, including its arbitration clause, was renewed from year to year. [A 131.] This appeal followed.

## DISCUSSION

### I

■ We review the district court's determination as to whether parties have agreed to arbitrate de novo. *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295 (2d Cir.1999). However, the factual findings underlying the conclusion may not be overturned unless clearly erroneous. *Id.* "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary

---

* The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). We "generally resolve such cases in favor of arbitration." *CPR (USA) Inc. v. Spray,* 187 F.3d 245, 254 (2d Cir.1999).

## II

The only question presented in this appeal is whether the arbitration clause in LeBeau's employment contract was still in force when she lost the election in May 2002. If it was still in force, it is common ground that the present issue would be properly referred to arbitration, as the arbitration clause clearly governs any possible dispute arising out of the contract. The parties agree that New York law applies to this question, even though federal labor law may govern George's other claims not presently before us.

▮ It is a general rule under New York law that

> [w]hen, upon the expiration of a contract of employment for a definite term, the employee continues to render the same services as he rendered during the term of the contract without expressly entering into any new agreement, it will be presumed that he is serving under a new contract having the same terms and conditions as the original one and provisions and restrictions forming essential parts of the original contract, even though collateral to the employment itself, continue in force.

*Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs.,* 871 F.Supp. 709, 727 (S.D.N.Y.1995), *quoting Borne Chem. Co. v. Dictrow,* 85 A.D.2d 646, 445 N.Y.S.2d 406, 411 (2d Dep't 1981).

George does not appear to contest this rule. Rather, he relies upon *Waldron v.*

*Goddess,* 61 N.Y.2d 181, 473 N.Y.S.2d 136, 461 N.E.2d 273 (1984), to argue that mere continuation of employment, without more, is insufficient for a court to imply renewal of an agreement to arbitrate in an expired employment contract.

Waldron and Goddess were both real estate brokers who worked for the same business. Both of their employment contracts specified that certain disputes among employees or between an employee and the business would be submitted to arbitration. *Id.* at 275. However, Goddess's contract, which would have given her the right to compel arbitration, expired before the dispute and, although she kept working, she rejected her employer's offer to enter into a new contract. *Id.* at 274. When the disagreement arose, Goddess sought to compel arbitration. The Court of Appeals granted Waldron's request for a stay of arbitration:

> Nor is there merit to Goddess's claim that the arbitration agreement in her expired employment contract with [the employer] constituted a binding right and obligation to arbitrate disputes with other employees. Not only did that contract expire prior to the dispute and no written employment contract was in existence, but also, the mere continuation of her employment did not operate to extend the arbitration agreement of the expired employment contract. Although the conduct of Goddess and [the employer], subsequent to the expiration of the contract, may be construed to imply an agreement to extend some of its provisions, the threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms. Absent a clearly expressed intention to renew the arbitration agreement contained in the otherwise expired employment contract or to adopt one contained elsewhere, Goddess was neither bound

thereto nor could she derive any reciprocal right therefrom to compel Waldron to arbitrate.

*Id.* at 275–76 (quotation marks and citations omitted). Thus, George argues, the arbitration clause lapsed even if the contract continued.

George's reading of *Waldron* would put *Waldron* in conflict with several other cases, both New York state cases and federal cases interpreting New York state law. In *Vann v. Kreindler, Relkin & Goldberg,* 54 N.Y.2d 936, 445 N.Y.S.2d 139, 429 N.E.2d 817 (1981), which the New York Court of Appeals decided before *Waldron,* the plaintiff signed a partnership agreement with a law firm that contained a broad arbitration clause. The original partnership agreement dissolved two years later, in 1974, upon the withdrawal of one of the original partners. *Id.* at 818. No new written agreement was executed by the partnership's members before the plaintiff's withdrawal from the firm in 1979. *Id.* The Appellate Division found that the members of the successor firm treated the original partnership agreement as continuing in effect, and held that the arbitration agreement continued to be in force. *Id.*

The Court of Appeals affirmed. "It is undisputed that the 1972 agreement contained a broad and unequivocal arbitration provision. By treating that agreement as continuing in force after the dissolution of the original partnership, the members of the successor partnership demonstrated their intention to be governed by that agreement's arbitration clause." *Id.* (citations omitted).

Recognizing the tension between *Waldron* and *Vann,* at least one federal case has interpreted *Waldron* as limited to its facts. In *Royal Air Maroc v. Servair, Inc.,* 603 F.Supp. 836 (S.D.N.Y.1985), the parties had entered into an agreement with an arbitration clause. The relationship between the parties continued for one and a half years after the expiration of the initial contract. *Id.* at 837–38. The court granted the motion to compel arbitration, holding that *Waldron* was inapplicable: "In *Waldron,* subsequent to expiration of the initial contract there was an express rejection of an offer to renew a written contract. Consequently, the court was unwilling to override this express rejection and to find the earlier, expired arbitration clause binding." *Id.* at 841.

We agree that *Waldron* should be limited to its facts in light of its failure to overrule explicitly (or even to mention) *Vann.* Additionally, *Spray* buttresses our conclusion, although it does not mention *Waldron.* In *Spray,* the parties entered into an agreement for a five-year "Period of Employment." 187 F.3d at 248. The agreement contained a broad arbitration clause. *Id.* at 250. Spray continued work for CPR with the same salary and benefits after the expiration of the agreement. *Id.* at 249. The parties eventually disagreed regarding bonuses owed to Spray. It was uncontested that the dispute fell under the agreement's arbitration clause; the question was whether the arbitration clause was still in force *Id.* at 255–56.

We affirmed the district court's denial of the motion to stay arbitration. "The agreement between [the parties] supports a construction that preserves a continuing right to arbitration. It contains a specific provision calling for the arbitration of [this type of] dispute[ ]...." *Id.* at 255. We continued: "Since the Agreement expressly *contemplates arbitration in the event of a dispute over the [bonus] amount due ...,* and since there is such a dispute, arbitration is compelled *whether or not the Agreement expired in 1994." Id.* at 256. While it is unclear whether we were relying on state or federal law in reaching this con-

clusion, our holding reflects the preference of the New York courts to send disputes to arbitration if the parties have agreed to do so.

George's reliance on *Donnkenny Apparel, Inc. v. Lee*, 291 A.D.2d 224, 736 N.Y.S.2d 862 (1st Dep't 2002), does not help his case. In *Donnkenny*, the court granted a stay of arbitration where the arbitration clause was contained in an expired employment contract. However, there the expired agreement contained an explicit provision that any renewal of the agreement had to be in writing. *Id.* Thus, the court held there was no agreement to arbitrate. Here, LeBeau's initial employment contract contained no such provision.

■■■ After LeBeau's original contract expired in May 1996, she continued her employment with DC 1707 according to the terms of that contract until George's election victory in 2002 brought her employment to an end. During this six-year period, she never negotiated a new contract with DC 1707. Nor did she ever reject an offer to do so. Because LeBeau continued to render the same services that she rendered during the term of her initial contract, the arbitration provision contained within it renewed from year to year. *See Borne Chem. Co.*, 445 N.Y.S.2d at 411. The district court was therefore correct in determining that LeBeau is entitled to arbitration of her claim for benefits under the employment contract.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the motion to stay arbitration.