*Accenture, et al. v. Spreng*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term 2010

(Argued: May 5, 2011        Decided: May 27, 2011)

Docket No. 11-222

_____

ACCENTURE LLP and LESLIE ALAN BAILEY,

*Plaintiffs-Appellants,*

-v.-

JIM L. SPRENG,

*Defendant-Appellee.*

_____

Before:

FEINBERG, MINER, and WESLEY, *Circuit Judges.*

Appeal from an order of the United States District Court for the Southern District of New York (Marrero, *J.*) denying Plaintiffs-Appellants' motion for a preliminary injunction and temporary restraining order after they failed to demonstrate irreparable harm.

Plaintiffs-Appellants moved the district court to enjoin an arbitration, and the court denied relief. We conclude that the Federal Arbitration Act, 9 U.S.C. § 16(b)(4), precludes our review of the district court's order refusing to enjoin the arbitration. Notwithstanding the statute, Plaintiffs-Appellants claim that we have appellate jurisdiction because the district court's order

was a "final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). We conclude, however, that a "final decision with respect to an arbitration" requires an official dismissal of all claims. Thus, where the district court stays proceedings in lieu of dismissal, the decision is not final. Plaintiffs-Appellants also claim that we have jurisdiction to enforce an interim arbitration award pursuant to 9 U.S.C. § 16(a)(1)(D). We conclude, however, that an arbitration award is a final adjudication of a claim on the merits, and a procedural ruling that denies leave to amend is not an "award," since the decision has no effect on the merits of the proposed claims. As a result, we dismiss the appeal for lack of jurisdiction.

**DISMISSED.**

---

BRIAN D. MURPHY (Peter A. Walker, *on the brief*), Seyfarth Shaw LLP, New York, NY, *for Plaintiffs-Appellants*.

THEODORE R. SNYDER, Krebsbach & Snyder, P.C., New York, NY (Anthony J. LaCerva, Collins & Scanlon LLP, Cleveland, OH, *on the brief*), *for Defendant-Appellee*.

---

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Accenture LLP ("Accenture") provides global management and technology consulting services. Accenture employed Defendant-Appellee Jim L. Spreng ("Spreng") from August 2006 to March 31, 2009. Before Spreng joined Accenture, he owned two companies: Advantium and XPAN. Advantium prevented clients from

2

overpaying vendors by using software applications, while XPAN recouped clients' overpayments through an audit recovery process. Plaintiff-Appellant Leslie Alan Bailey ("Bailey") co-owned Meridian, a business that cooperated with XPAN.

In July 2006, Spreng and Bailey sold their companies to Accenture. In exchange, Accenture paid Spreng a lump sum and a retention bonus, offered Spreng employment with Accenture, and provided Spreng an opportunity to earn a performance bonus. Accenture and Spreng memorialized their specific agreements in an Asset Purchase and Framework Agreement and an Employment Agreement. Each agreement included an arbitration clause.

Spreng would earn the performance bonus if his companies met certain revenue targets. Accenture agreed to make "commercially reasonable efforts" to include Spreng's products as service offerings within its invoice-to-pay offerings, but Accenture reserved discretion to operate its business in the manner that it saw fit, notwithstanding a negative impact on Spreng's prospective income. By November 2008, Spreng's companies had fallen short of the revenue threshold necessary to trigger any performance bonus for

3

Spreng, so Accenture notified him that it would terminate his employment as of March 31, 2009.

**A.    Arbitration Proceedings**

On June 10, 2009, Spreng filed an arbitration demand. He alleged claims for wrongful termination and breach of contract based on Accenture's failure to pay a performance bonus.  Accenture attended a full-day mediation and engaged in nearly seven months of settlement negotiations before Accenture determined that the dispute would require an actual arbitration hearing.  Accenture and Spreng agreed on an arbitrator and commenced discovery.

On September 16, 2010, after the arbitrator compelled Accenture to produce various documents, Spreng discovered several emails between senior Accenture executives that allegedly suggested that Accenture had padded estimated revenues for Spreng's companies by $17 million.  On October 12, 2010, Spreng moved for leave to amend his statement of claims in order to allege fraudulent inducement.  On October 13, 2010, the arbitrator denied the motion to amend (the "October Order"), thus foreclosing Spreng's ability to present his fraudulent inducement claim at the October 19, 2010 hearing.

4

On October 14, 2010, Spreng filed a new demand for arbitration that included his original claims, plus claims of fraud and breach of contract.  Later that day, Spreng withdrew his first demand for arbitration, styling the withdrawal as "without prejudice."  Accenture disputed this characterization and asked the arbitrator to deem Spreng's withdrawal as "with prejudice."  The arbitrator denied the motion, finding that the American Arbitration Association ("AAA") had accepted Spreng's withdrawal and, as a result, that he was "without jurisdiction or authority" to address Accenture's request.  Thereafter, Accenture repeatedly requested that the AAA reject Spreng's new arbitration demand.  The AAA, however, responded that it was without power to stay the second arbitration absent the parties' agreement or a court order.

**B.  District Court Proceedings**

Two months after Spreng withdrew his first arbitration request, Accenture brought the underlying action.  In that action, Accenture moved to enjoin the second arbitration pending the district court's determination of Accenture's claims that: (1) Spreng's withdrawal from the first arbitration waived his right to a second arbitration;

5

(2) the October Order was an enforceable arbitration award; (3) Spreng had breached his contractual obligation to arbitrate; and (4) the dispute should be remanded to the first arbitrator.

Following oral argument, the district court denied Accenture's motions. The court found that "Accenture's requests can be appropriately addressed within the context of the arbitration and should be directed to the arbitrator administering the Second Arbitration." *Accenture LLP, et al. v. Spreng*, No. 10-cv-9393, 2010 WL 5538384, at *2 (S.D.N.Y. Dec. 23, 2010). The court concluded that Accenture faced no irreparable harm because it alleged a financial loss and could recover damages. Thus, it denied Accenture's motion for a preliminary injunction and temporary restraining order.

The district court inquired as to whether Accenture contemplated any further proceedings. Accenture responded that it intended to pursue its claims for a permanent injunction, enforcement of the October Order, and breach of contract. Accenture requested permission to file a motion for a stay pending appeal, which the court denied. Nevertheless, on February 14, 2011, with Accenture's

consent, the court stayed all proceedings pending appeal.

Before this Court, Accenture moved for an injunction pending appeal and requested an expedited briefing schedule. We denied an injunction, but granted an expedited appeal. On appeal, Accenture argues: (1) that the district court erred by not granting its motion for a preliminary injunction and temporary restraining order; (2) that Spreng's withdrawal from the first arbitration waived his right to a second arbitration; and (3) that the first arbitration's October Order (denying Spreng leave to amend) was an enforceable arbitration award.

## II. DISCUSSION

Congress enacted the Federal Arbitration Act ("FAA") "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA's provisions "manifest a 'liberal federal policy favoring arbitration agreements.'" *Id.* at 25 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 16 of the FAA "furthers [the FAA's] aim of eliminating barriers to arbitration by promoting appeals

7

from orders barring arbitration and limiting appeals from orders directing arbitration." *Ermenegildo Zegna Corp. v. Zegna*, 133 F.3d 177, 180 (2d Cir. 1998) (internal quotation marks and brackets omitted).

## A. FAA § 16(b)(4) Restricts Appellate Jurisdiction Over District Court Orders that Refuse to Enjoin Arbitration.

We lack jurisdiction over this appeal because Accenture seeks review of a district court's order "refusing to enjoin an arbitration." 9 U.S.C. § 16(b)(4). While 28 U.S.C. § 1292(a)(1) grants us broad appellate jurisdiction over district courts' interlocutory orders refusing injunctions, FAA § 16(b)(4) limits our review of interlocutory orders refusing to enjoin arbitration.[1] Our sister circuits agree.

In *ConArt, Inc. v. Hellmuth*, for example, the Eleventh Circuit held that § 16(b)(4) limits § 1292(a)(1)'s broad grant of appellate jurisdiction. 504 F.3d 1208, 1210 (11th Cir. 2007). There, a general contractor assigned its rights against a subcontractor to an architectural firm supervising construction. The contract between the general contractor

---

[1] Section 16(b) still allows us to review, in our sole discretion, decisions that a district court certifies pursuant to 28 U.S.C. § 1292(b). The district court did not certify its decision for our immediate review.

8

and the architectural firm included an arbitration provision, and after the subcontractor sued the architectural firm in federal court, the firm asserted its assigned counterclaims in a demand for arbitration. In response, the subcontractor moved to enjoin the arbitration, but the district court denied relief. *Id.* at 1209-10.

On appeal, the Eleventh Circuit rejected the subcontractor's claim that § 1292(a)(1) superceded § 16(b)(4):

> That argument has too much throw weight. Accepting it would write out FAA § 16(b)(4)'s clear command, because all orders "refusing to enjoin an arbitration" are orders "refusing...injunctions." We don't have the authority to excise specific statutory provisions in favor of more general ones.

504 F.3d at 1210 (citations omitted).[2] The court applied two canons of statutory interpretation to conclude that § 16(b)(4) limited 28 U.S.C. § 1292(a)(1)'s broad grant of appellate jurisdiction. First, the court found that because

---

[2] *See also ON Equity Sales Co. v. Pals*, 528 F.3d 564, 567-68 (8th Cir. 2008) (holding that while the court had general jurisdiction over interlocutory orders denying motions for injunctive relief, FAA § 16(b)(4) foreclosed its review of non-final arbitration orders); *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (dismissing appeal for lack of jurisdiction pursuant to FAA § 16(b)(4)); *see also Televisa S.A. De C.V. v. DTVLA WC Inc.*, 374 F.3d 1384 (9th Cir. 2004) (withdrawing opinion after recognizing that FAA § 16(b)(4) stripped the court of appellate jurisdiction).

§ 16(b)(4) was narrow and specific, while § 1292(a)(1) was broad and general, the "specific [w]as an exception to the general." 504 F.3d at 1210. Second, the court found that because Congress enacted § 1292(a)(1) before § 16(b)(4), § 1292(a)(1) must yield to § 16(b)(4) "to the extent necessary to prevent the conflict." *Id.*

Accenture challenges an interlocutory order refusing to enjoin an arbitration. As such, Accenture's appeal clearly falls within § 16(b)(4)'s reach. Recognizing this jurisdictional bar respects the ongoing arbitration and is in accord with our well established view favoring arbitration. *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002); *Ermenegildo*, 133 F.3d at 180.

**B.   This Court Also Lacks Jurisdiction Under FAA § 16(a)(3) Because the District Court's Order is Not Final.**

Notwithstanding § 16(b)(4), Accenture claims that we have appellate jurisdiction because it appeals from "a final decision with respect to an arbitration." *See* 9 U.S.C. § 16(a)(3). Accenture claims that while the district court did not dismiss the underlying proceedings, the "practical effect" of the order denying relief rendered it final. Our cases, however, leave no doubt that the decision was not final.

A final decision is one that "'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360, 362 (2d Cir. 2003) (per curiam) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000)). To date, our decisions defining a "final decision with respect to an arbitration" have arisen in the context of § 16(b)(3) (orders to compel arbitration). Nevertheless, our prior analysis is equally applicable to § 16(b)(4) (orders "refusing to enjoin an arbitration").

In *Cap Gemini*, after compelling arbitration, the district court transferred the case to its suspension docket. The district court had indicated that it intended that its decision would be final and that the only reason it had retained the case was to allow the parties to enforce an award, if any, without filing another lawsuit. We exercised appellate jurisdiction because of the unique circumstances in the case, but declared: "[H]enceforth, we will abide by both the letter and spirit of *Green Tree* and *require an official dismissal of all claims before reviewing an order to compel arbitration*." *Cap Gemini*, 346 F.3d at 363 (emphasis added).

11

We apply *Cap Gemini* and extend its holding to FAA § 16(b)(4).  As early as 2002, we cautioned in *Oleochemicals*:

> We urge district courts in these circumstances to be as clear as possible about whether they truly intend to dismiss an action or mean to grant a stay pursuant to 9 U.S.C. § 3, which supplies that power, or whether they mean to do something else entirely. Courts should be aware that a dismissal renders an order appealable under § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under § 16(b).

*Oleochemicals*, 278 F.3d at 93.  *Oleochemicals'* instruction is equally applicable to § 16(b)(4).

Accenture argues that *CPR v. Spray*, 187 F.3d 245 (2d Cir. 1999), supports its argument that the district court's order was final and appealable.  *Spray*, however, relied on our outdated precedent that determined finality based on whether the order was entered in an "embedded" or "independent" proceeding.  187 F.3d at 253-54.  The Supreme Court rejected that analysis in *Green Tree*.  *See Green Tree*, 531 U.S. at 88-89; *Oleochemicals*, 278 F.3d at 92 (recognizing abrogation).  Therefore, *Spray* is inapposite.[3]

_____

[3] Our sister circuits now generally agree that finality requires a dismissal*. Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 958-61 (9th Cir. 2007); *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 251-52 (5th Cir. 2006); *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1132 (10th Cir. 2004); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002); *Blair v.*

It matters not how Accenture characterizes the district court's order; it is clear that it was not a "final decision with respect to an arbitration." *See* 9 U.S.C. § 16(a)(3). The district court did not dismiss the proceedings, and Accenture admits that it contemplates further proceedings before the district court. In a letter to the district court, Accenture "respectfully request[ed] that the [district court] retain jurisdiction as [Accenture] does contemplate further proceedings." Endorsed Letter at 1, *Accenture LLP, et al. v. Spreng*, No. 1:10-cv-9393 (S.D.N.Y. Dec. 30, 2010), ECF No. 11. Accenture also indicated that it "intend[ed] to still advance its claims for a permanent injunction, enforcement of [the October Order], and breach of the employment agreement." *Id.* Accenture requested a pre-motion conference before moving for "a stay of any further proceedings in [the district court] pending appeal." *Id.* at 2.

At oral argument before this Court, Accenture claimed that it had asked the district court to clarify whether its

---

*Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002). *But see Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 392-93 (5th Cir. 2006) (finding order to be final, even though the district court had stayed proceedings, because the district court had stayed *state* proceedings such that the stay was not pursuant to 9 U.S.C. § 3).

decision was final for purposes of § 16(a)(3). In Accenture's request for reconsideration, however, it neither asked for such relief nor mentioned § 16(a)(3) or § 16(b)(4). *See* Endorsed Letter, No. 1:10-cv-9393 (S.D.N.Y. Dec. 30, 2010), ECF No. 11. Moreover, Accenture *consented* to a stay. Endorsed Letter at 2, No. 1:10-cv-9393 (S.D.N.Y. Feb. 14, 2011), ECF No. 16 ("Accenture has no objection to a stay of District Court proceedings pending appeal."). It is clear that the dispute below remains open, albeit stayed. As a result, the district court's decision was not final; we lack jurisdiction over the appeal.

**C.   This Court Otherwise Lacks Jurisdiction Over Accenture's "Merits-Based" Claims.**

Accenture also claims that this Court has jurisdiction over two merits-based claims: (1) that Spreng's withdrawal from the first arbitration waived his right to a second arbitration; and (2) that the October Order (denying Spreng leave to amend) was an enforceable arbitration award. But Accenture presents us with no final order for review. Thus, Accenture's merits-based claims are beyond our reach unless the claims themselves provide a jurisdictional hook.

Of the two, only the second presents a conceivable jurisdictional premise.[4]

Accenture correctly argues that we may review an order "confirming or denying confirmation of an award or partial award." 9 U.S.C. § 16(a)(1)(D). The October Order, however, was not an "award." An arbitration award is a final adjudication of a claim on the merits. *See Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1184 (3d Cir. 1972). While an arbitrator may grant interim relief as an "interim award," the interim award must "finally and definitely dispose[] of a separate independent claim." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).

The October Order does not qualify as an "arbitration award" because it does not "finally and definitely" dispose of Spreng's fraud claim. In the October Order, the arbitrator explained that "[i]t is one thing to add alternative theories of relief arguably arising from the same set of facts; it is quite another to try to add a

---

[4] While Accenture claims that we have pendent appellate jurisdiction over its merits-based claims, we cannot exercise pendent jurisdiction without a central, appealable claim in the first place. *See Myers v. Hertz Corp.*, 624 F.3d 537, 552 (2d Cir. 2010).

15

mutually exclusive theory of relief on a 'new' set of facts on the eve of the hearing." The arbitrator did not rule on the substance of Spreng's proposed amended claims. Rather, he made a procedural ruling that denied Spreng leave to amend. For purposes of our review, the October Order was an interim procedural ruling, not an arbitration award.[5] Thus, FAA § 16(a)(1)(D) does not grant us jurisdiction to review the arbitrator's ruling.

## III. CONCLUSION

We must **DISMISS** Appellants' claims because we lack appellate jurisdiction.

---

[5] The second arbitrator remains free to determine the preclusive effect, if any, of the October Order.