**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 14-1799**

---

CHORLEY ENTERPRISES, INC., a Maryland Corporation; MATTHEW
CHORLEY; CARLA CHORLEY,

               Plaintiffs - Appellees,

    v.

DICKEY'S BARBECUE RESTAURANTS, INC., a Texas corporation;
ROLAND DICKEY, JR.; JERREL DENTON,

               Defendants - Appellants.

------------------------

JAMES STROTHER CROCKETT, JR.,

               Court-Assigned Amicus Counsel.

---

**No. 14-1800**

---

JUSTIN TROUARD; JESSICA CHELTON,

               Plaintiffs - Appellees,

    v.

DICKEY'S BARBECUE RESTAURANTS, INC., a Texas corporation;
ROLAND DICKEY, JR.; JERREL DENTON,

               Defendants - Appellants.

------------------------

JAMES STROTHER CROCKETT, JR.,

       Court-Assigned Amicus Counsel.

---

**No. 14-1833**

---

CHORLEY ENTERPRISES, INC., a Maryland Corporation; MATTHEW CHORLEY; CARLA CHORLEY,

       Plaintiffs - Appellants,

     v.

DICKEY'S BARBECUE RESTAURANTS, INC., a Texas corporation; ROLAND DICKEY, JR.; JERREL DENTON,

       Defendants - Appellees.

------------------------

JAMES STROTHER CROCKETT, JR.,

       Court-Assigned Amicus Counsel.

---

**No. 14-1834**

---

JUSTIN TROUARD; JESSICA CHELTON,

       Plaintiffs - Appellants,

     v.

DICKEY'S BARBECUE RESTAURANTS, INC., a Texas corporation; ROLAND DICKEY, JR.; JERREL DENTON,

       Defendants - Appellees.

------------------------

JAMES STROTHER CROCKETT, JR.,

Court-Assigned Amicus Counsel.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore and Greenbelt. Paul W. Grimm, District Judge. (1:14-cv-01650-GLR; 8:14-cv-01703-PWG)

---

Argued: March 26, 2015           Decided: August 5, 2015

---

Before DIAZ, FLOYD, and THACKER, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Floyd wrote the opinion, in which Judge Diaz and Judge Thacker joined.

---

**ARGUED:** Roger Brian Kaplan, GREENBERG TRAURIG, LLP, Florham Park, New Jersey, for Appellants/Cross-Appellees. Russell James Gaspar, COHEN MOHR LLP, Washington, D.C., for Appellees/Cross-Appellants. James Strother Crockett, Jr., SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, as Court-Assigned Amicus Counsel. **ON BRIEF:** Aaron Van Nostrand, GREENBERG TRAURIG, LLP, Florham Park, New Jersey, for Appellants/Cross-Appellees. Andrew K. Wible, C. Patteson Cardwell, IV, COHEN MOHR LLP, Washington, D.C., for Appellees/Cross-Appellants. Sarah B. Smith, SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Amicus Curiae.

---

FLOYD, Circuit Judge:

This appeal arises from a franchise dispute. Dickey's, a national franchisor of quick-service barbeque restaurants, claims several of its franchisees in Maryland breached their franchise agreements by running their restaurants poorly. The franchisees in turn claim that Dickey's misrepresented start-up and other costs in violation of Maryland franchise law, thus never giving them a chance to succeed. At this stage in the proceeding, however, we must decide only whether the parties' claims should be arbitrated, as Dickey's argues, or heard in federal court in Maryland, as the franchisees contend.

This issue is governed by the parties' franchise agreements. On one hand, the agreements require arbitration of all claims "arising out of or relating to" the agreements. J.A. 553. On the other hand, the agreements state that the agreements "shall not require" the franchisees to waive their "right to file a lawsuit alleging a cause of action arising under Maryland Franchise Law in any court of competent jurisdiction in the State of Maryland." J.A. 555.

The district court held that these provisions create an ambiguity that only a jury can resolve. In doing so, the district court appeared to conclude that the agreements set up an "either/or" scenario: either all the parties' claims must go forward in arbitration, or they must all proceed in federal

4

court. For the reasons set forth below, we will reverse. As a matter of law, the clear and unambiguous language of these provisions requires that the common law claims asserted by Dickey's must proceed in arbitration, while the franchisees' Maryland Franchise Law claims must proceed in the Maryland district court.

We recognize that requiring the parties to litigate in two different forums may be inefficient, and could lead to conflicting results. But this outcome is mandated by the Federal Arbitration Act, which requires piecemeal litigation where, as here, the agreements call for arbitration of some claims, but not others. Accordingly, we reverse with instructions to compel arbitration of the common law claims only. We leave it to the district court's discretion whether to stay the franchisees' Maryland Franchise Law claims pending conclusion of the arbitration.

I.

Dickey's Barbeque Restaurants, Inc. (Dickey's), is a Texas-based franchisor of quick-service restaurants specializing in barbequed meats, with franchises operating throughout the United

States.[1]  Both sets of plaintiffs in this collective appeal – Justin Trouard and Jessica Chelton ("Trouard and Chelton"), and Matthew and Carla Chorley and their company, Chorley Enterprises, Inc. ("the Chorleys") (collectively, the "Franchisees") – previously operated Dickey's restaurants in Maryland under franchise agreements signed in 2012.[2]

A.

The Franchisees' respective relationships with Dickey's soured shortly after they opened their restaurants.

According to Dickey's, the Chorleys violated their franchise agreement by, among other things, failing to pass certain food safety inspections and receiving numerous customer complaints.[3]  As a result, Dickey's sent several "notices of operational deficiencies" to the Chorleys throughout 2013 and early 2014.  In response, the Chorleys asserted that Dickey's fraudulently misrepresented the operating costs and estimated profits during negotiations for the franchise in violation of

---

[1] For ease of reference, we refer to Dickey's as the "Franchisor" when using its possessive form.

[2] The Chorleys also signed a development agreement granting them the right to open an additional restaurant, but this lawsuit was filed before they exercised that right.

[3] Because this appeal turns on the terms of the parties' agreements rather than the specifics of their allegations, we provide only a high-level summary of the parties' allegations here.

the Maryland Franchise Registration and Disclosure Law, Md. Code Bus. Reg. §§ 14-201 to 14-233 (2015) (the "Maryland Franchise Law").

Despite initially exploring whether the dispute could be mediated, Dickey's ultimately brought arbitration proceedings against the Chorleys in Texas on May 1, 2014. In the arbitration demand, Dickey's asserted three common law claims. Count I sought a declaratory order finding that the Chorleys breached their franchise agreement; Count II sought a declaratory order finding that the Chorleys breached their development agreement; and Count III sought damages for the Chorleys' breach of both agreements.

The Chorleys then brought suit in federal court in Maryland, seeking to enjoin the arbitration and asking the court to declare the arbitration provisions unenforceable. The Chorleys also brought affirmative claims for relief under the Maryland Franchise Law against Dickey's, its owner, and its director of business development (collectively "Dickey's" or the "Franchisor"). Dickey's in turn opposed the motion for injunctive relief, and also filed a cross-motion to compel arbitration of all the Chorleys' claims. In the alternative, Dickey's sought to stay those claims pending arbitration.

Trouard and Chelton had a similar history with Dickey's. Dickey's contends that Trouard and Chelton mismanaged their

7

restaurant, while Trouard and Chelton assert that Dickey's violated the Maryland Franchise Law by misrepresenting start-up costs and estimated potential sales and profits. The parties initially discussed mediating their dispute, but Dickey's ultimately filed arbitration in Texas, alleging breach-of-contract and fraud claims.[4] Trouard and Chelton then filed suit in Maryland, seeking to enjoin the arbitration and requesting affirmative relief under the Maryland Franchise Law. Dickey's opposed the motion for injunctive relief, and again filed a cross-motion to compel arbitration or, in the alternative, to stay the action.

The district court consolidated the Franchisees' lawsuits for purposes of deciding these preliminary motions. The arbitrations are currently being held in abeyance pending a final decision on the motions for preliminary injunctions and the cross-motions to compel arbitration.

B.

Both below and here on appeal, the parties' arguments hinge on the interplay between two provisions in the Franchisees' virtually identical franchise agreements: (i) the dispute

---

[4] In its fraud claim, Dickey's alleges that Trouard and Chelton falsified sales reports in an effort to misrepresent their restaurant's financial performance.

8

resolution provisions in Article 27 and (ii) the Maryland-specific provisions in Article 29.

Article 27, which contains the "Arbitration Clause," requires the parties to first mediate their claims before proceeding to arbitration. If mediation fails to resolve the disputes within 90 days after the mediator has been appointed, either party is entitled to seek arbitration at the office of the American Arbitration Association located nearest to the Franchisor's corporate headquarters in Plano, Texas. In the Arbitration Clause, the parties also agreed to arbitrate "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform arising out of or relating to this Agreement (and attachments) or the relationship created by this Agreement." J.A. 553.[5]

Notwithstanding this Arbitration Clause, the agreements also provide that the "STATE SPECIFIC PROVISIONS" in Article 29 "CONTROL." J.A. 555. And Article 29.1, the "Inconsistent Provisions Clause," provides that Maryland law "shall govern and control any contrary or inconsistent provisions" of the agreement, and that any such inconsistent provisions are "modified and amended" so that they comply with Maryland law. Id. Finally, Article 29.2(4), the "Maryland Clause," states

---

[5] The Chorleys' development agreement contains a virtually identical arbitration clause. Id. at 585.

9

that the "provisions of this Agreement shall not require you to waive your right to file a lawsuit alleging a cause of action arising under Maryland Franchise Law in any court of competent jurisdiction in the State of Maryland." Id.[6]

The Maryland Clause is similar (but not identical) to Section 02.02.08.16(L)(3) of the Code of Maryland Regulations (the "Regulation"). Under the Regulation, a franchisor violates the Maryland Franchise Law if it requires a franchisee to "[w]aive the franchisee's right to file a lawsuit alleging a cause of action arising under the Maryland Franchise Law in any court of competent jurisdiction in this State." Md. Code Regs. 02.02.08.16(L)(3) (2015).

### C.

During the district court proceedings, the parties presented opposing interpretations of these clauses. The

---

[6] Similarly, a "Maryland Addendum" to the Chorleys' development agreement provides:

> Any provision of this Agreement which designates jurisdiction or venue outside of the State of Maryland or requires you to agree to jurisdiction or venue in a forum outside of the State of Maryland is void with respect to any claim arising under the Maryland Franchise Registration and Disclosure Law.

J.A. 597.

10

Franchisees claimed that the Maryland Clause fundamentally conflicts with the Arbitration Clause, thus rendering the Arbitration Clause void such that all of the parties' claims must proceed in the district court. Dickey's took a different view, arguing that the Maryland Clause is consistent with the Arbitration Clause because the Maryland Clause merely preserves the Franchisees' right to bring a claim under the Maryland Franchise Law in either arbitration or in court. Alternatively, assuming the Franchisees' interpretation was correct, Dickey's argued that the Federal Arbitration Act, (FAA), 9 U.S.C. § 1 et seq., would preempt the Maryland Clause as an invalid prohibition on arbitration.

The district court concluded that both parties' readings of the Arbitration and Maryland Clauses were plausible, thus rendering the agreements ambiguous. The district court noted that under the Franchisor's interpretation, the "Arbitration Clause could function in harmony with the Maryland Clause." J.A. 32. The court also recognized that under the Franchisees' "view, the Maryland Clause . . . control[s], and [its] language refers to litigation only, not arbitration." Id. Faced with these conflicting interpretations, the court reasoned that a jury must determine exactly which claims, if any, the parties

11

agreed to arbitrate.[7]   Thus, the district court denied the parties' respective motions without prejudice and ordered a jury trial on the meaning of the franchise agreements.[8]

Dickey's then timely appealed the denial of its motions to compel, and the Franchisees cross-appealed from the denial of their motions for preliminary injunctive relief.

## II.

Before we can address the merits, we must determine whether we have jurisdiction over these appeals.  We ordinarily review only final decisions from the district courts.  Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 696 (4th Cir. 2012). And there is no dispute that the order at issue is not final. Thus, we typically would not have jurisdiction over the parties' interlocutory appeals, absent an exception to the final order doctrine.

---

[7] Because the jury could have ultimately agreed with the Franchisor's interpretation of the respective clauses, the district court did not reach the Franchisor's alternative argument that the FAA preempts the Maryland Clause.

[8] Although the district court also held that the Chorleys' development agreement was similarly ambiguous "as to whether [the Chorleys] agreed to litigate Maryland Franchise Act claims as opposed to arbitrate them," the court concluded that the Maryland Addendum was unambiguous with respect to venue. Thus, assuming a jury found arbitration appropriate under that agreement, the district court held that any such arbitration must take place in Maryland, not Texas.

Section 16 of the FAA provides just such an exception. 9 U.S.C. § 16.[9] That section authorizes interlocutory appeals from a district court's refusal to either stay litigation pending arbitration under Section 3 of the FAA or compel arbitration under Section 4 of the FAA. 9 U.S.C. § 16(a)(1); see Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 713 (4th Cir. 2015) (stating that under Section 16, "an order that favors litigation over arbitration is immediately appealable, even if interlocutory in nature" (ellipsis omitted)). It is undisputed that the Franchisor's motions to compel expressly sought to enforce the Arbitration Clause under Sections 3 and 4 of the FAA. The district court's order also expressly denied the motions. Thus, on the surface at least, this Court appears to have jurisdiction under 9 U.S.C. § 16(a)(1).

The Court-appointed amicus disagrees, arguing that this matter is not as straightforward as it seems. The amicus reasons that Section 16(a)(1) applies only when a district court makes a final decision as to whether any or all of the claims between the parties must proceed to arbitration. Because the district court reserved a final ruling on the motions until after a jury trial, the amicus contends the order is not

---

[9] The parties agree that the Arbitration Clause is governed by the FAA.

immediately appealable. In essence, the amicus believes an interlocutory appeal under Section 16 is always premature if a district court orders a jury trial under Section 4 before deciding a motion to compel.

Although we appreciate the amicus's views, this interpretation is contrary to the FAA's plain language. Section 16(a)(1)(b) provides for interlocutory appeals of orders denying arbitration without stating whether those orders must be final. A separate subsection, Section 16(a)(3), provides for interlocutory review of any "final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). If Section 16(a)(1)(b) applies only to final orders, as the amicus contends, Congress would have said as much, as it did in Section 16(a)(3). See Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 102-03 (3d Cir. 2000) (finding it significant "that Congress decided to use the word 'final' in one part of the statute, but declined to do so in the section that declares that orders denying motions to compel arbitration are indeed appealable"). Congress did not do so, of course, because grafting a finality requirement onto Section 16(a)(1)(b) would read that section out of the statute by making it redundant with Section 16(a)(3). See id.

The amicus's interpretation would also frustrate the very purpose of Section 16. As we have previously recognized, Congress created appellate jurisdiction over non-final orders

14

denying motions to compel arbitration "to effectuate a strong policy favoring arbitration." Rota-McLarty, 700 F.3d at 696 (quotation omitted). Refusing to hear an appeal until after a jury trial would not further this policy. That is especially true where, as here, the arbitration agreements can be construed on their face as a matter of law, thereby making a jury trial unnecessary.

In short, the district court expressly "denied" the motions to compel arbitration "without prejudice." J.A. 35. As we have previously held, and we reiterate again today, that is "all that is necessary to grant us appellate jurisdiction in this case." Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 636 (4th Cir. 2002); see also Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012) ("[T]here can be no doubt that we have the authority to review an appeal from the District Court's order denying a motion to compel arbitration, irrespective of the fact that the order was denied without prejudice.").[10]

---

[10] The amicus contends a different result is warranted under Chase v. Sidney Frank Importing Co., Inc., 133 F.3d 913, 1998 WL 3609 (4th Cir. 1998) (per curiam). In that unpublished opinion, we concluded that an appeal was not ripe for review when the district court denied a motion to compel upon determining that additional factual development was necessary to decide the defendant's claim that the arbitration clause had been fraudulently induced. Amicus's reliance on Chase is misplaced for several reasons. Unlike in Chase, no further factual issues remain here – the Arbitration Clause may be construed as a matter of law. Additionally, Chase – which as an unpublished (Continued)

15

B.

The Franchisees also contend we have jurisdiction to hear their cross-appeal under 28 U.S.C. § 1292(a)(1), which authorizes interlocutory appeals of orders "refusing . . . injunctions." We are not so sure. The Franchisees fail to address Section 16(b)(4) of the FAA, which expressly prohibits immediate review of interlocutory orders refusing to enjoin arbitration. 9 U.S.C. § 16(b)(4). Several of our sister circuits have concluded that Section 16(b)(4) trumps 28 U.S.C. § 1292(a)(1), thus precluding immediate review of such orders. See Accenture LLP v. Spreng, 647 F.3d 72, 74-75 (2d Cir. 2011) (collecting cases). Section 16(b)(4) may also preclude us from exercising pendant appellate jurisdiction over the Franchisees' cross-appeal under Swint v. Chambers County Commission, 514 U.S. 35, 50-51 (1995) (suggesting that appellate courts may exercise jurisdiction over non-appealable issues that are "inextricably intertwined" with a question that is the proper subject of an immediate appeal).

We decline to decide these issues, however, because resolution of the Franchisor's appeal will necessarily decide

decision is not binding on this Court – appears to have been wrongly decided, and is against the weight of published authority holding that all orders denying motions to compel arbitration are immediately appealable under the FAA.

16

the issue presented by the Franchisees' cross-appeal: whether arbitration may proceed in Texas.  Indeed, the appeal and cross-appeal present two sides of the same coin: the Franchisor's appeal asserts that all the parties' claims should be arbitrated in Texas; the Franchisees' cross-appeal seeks to enjoin the arbitrations in Texas.  We need not step out on a jurisdictional limb as to the Franchisees' cross-appeal when deciding the Franchisor's appeal – which we clearly have jurisdiction over – will resolve all the issues raised by the parties.  Accordingly, we dismiss the cross-appeal as moot.

### III.

### A.

Having concluded that we have jurisdiction over the Franchisor's appeal, we turn to the merits of the parties' contentions.  The central issue before us is whether the district court properly refused to compel arbitration after concluding that the Maryland Clause renders the Arbitration Clause ambiguous.  We review this issue de novo.  Noohi v. Toll Bros., Inc., 708 F.3d 599, 605 (4th Cir. 2013).  "We also review de novo questions of state contract law concerning the validity of the parties' arbitration agreement."  Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 178 (4th Cir. 2013).

17

As background, Section 2 of the FAA, its "primary substantive provision," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 in turn "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." Moses H. Cone, 460 U.S. at 22.

We will compel arbitration under Section 4 if: (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement. Muriithi, 712 F.3d at 179 (citation omitted). "The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement." Id. If we conclude that the parties intended to arbitrate a dispute, we must enforce that agreement according to its terms. CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012). At the same time, it is well-settled that a "party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011) (quotation omitted).

18

B.

In determining the parties' intent, we apply ordinary state law principles governing the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). And under applicable Maryland Law,[11] we may "construe an ambiguous contract if there is no factual dispute in the evidence." Pacific Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486, 489 (Md. 1985); see also Sierra Club v. Dominion Cove Point LNG, L.P., 216 Md. App. 322, 334 (Md. Ct. Spec. App. 2014) (stating that "the mere fact that the parties disagree as to the meaning does not necessarily render [a contract] ambiguous" when it could only have one meaning as a matter of law). In the proceedings below, neither party disputed any facts: they simply offered conflicting interpretations of the relevant agreements. Notwithstanding the district court's decision to hold a jury trial then, this is precisely the type of issue we can decide as a matter of law.

---

[11] Although the "Governing Law" provisions state that the franchise agreements "shall be governed by and construed in accordance with the laws of the State of Texas," J.A. 553, the parties agree that Maryland law applies. The district court also applied Maryland law in its order, and both parties cite to Maryland law on appeal. Accordingly, we will also apply Maryland law here. Cf. Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991) (finding waiver of Massachusetts choice of law provision when both parties relied on New York law before district court and on appeal).

The district court concluded that Section 4 of the FAA requires a jury trial whenever the parties present conflicting interpretations of an agreement. The right to a jury trial under Section 4 of the FAA, however, is not automatic. Rather, the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists — and must also show sufficient facts in support. Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995); see also Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987).[12]

Not just any factual dispute will do. Rather, the party requesting a jury trial under Section 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law. This standard is akin to the burden on summary judgment. See Oppenheimer, 56 F.3d at 358 (comparing Fed. R. Civ. P. 56(c), (e) to the level of sufficient evidentiary facts needed for jury trial under 9 U.S.C. § 4). In other words, to obtain a jury

_____

[12] Although we have not previously addressed the standard for obtaining a jury trial under Section 4, we find the Second Circuit's approach persuasive and so expressly adopt it here. Cf. Glass v. Kidder Peabody & Co., 114 F.3d 446, 456 (4th Cir. 1997) (recognizing that the Second Circuit's decisions are "preeminent in arbitration law.").

20

trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate.[13]

Here, the Franchisees requested a jury trial, but did not dispute any material facts. Accordingly, the Franchisees are not entitled to a jury trial under Section 4 of the FAA. Rather, we will decide whether the parties intended to arbitrate their disputes as a matter of law based on the plain language of the agreements.

C.

1.

We first consider whether the parties intended to arbitrate the Franchisor's common law claims. This question is governed by the Arbitration Clause, Ford v. Antwerpen Motorcars, ___ A.3d ___, No. 68, 2015 WL 3937607, at * 3 (Md. July 13, 2015), which indicates that the Franchisees agreed to arbitrate "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform arising out of or relating to

---

[13] The policy behind the FAA supports this standard. If parties could request and receive jury trials merely by advancing conflicting interpretations of contractual language without any supporting extrinsic evidence, it would frustrate the very policies that the FAA is meant to promote – the swift and inexpensive alternative resolution of disputes outside of the judicial forum.

this Agreement (and attachments) or the relationship created by this Agreement."  J.A. 553.

The Franchisor's breach of contract claims clearly "arise out of or relate to" the Franchise Agreements, and thus fall squarely within the Arbitration Clause.  See Am. Recovery Corp. v. Computerized Thermal Imaging, 96 F.3d 88, 93 (4th Cir. 1996); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (labeling as "broad" a clause that required arbitration of "any controversy or claim arising out of or relating to this Agreement").  Similarly, the Franchisor's claim that Trouard and Chelton fraudulently falsified sales reports falls within the scope of the Arbitration Clause because that claim arises directly from the franchise relationship created by the agreement.  See Long v. Silver, 248 F.3d 309, 318 (4th Cir. 2001) (holding that fraud claims must be arbitrated when a "significant relationship" exists between those claims and the contract in which the arbitration clause is contained).  By the agreements' plain language then, it seems clear that the Franchisees have agreed to arbitrate the Franchisor's common law claims.

2.

The Franchisees make several unavailing arguments to avoid this result.   First,  the Franchisees  contend  that  Dickey's

22

cannot arbitrate its dispute because it failed to first seek mediation as required by Article 27 of the franchise agreements. According to the Franchisees, mediation is a condition precedent to invoking the arbitration provision, and so the motions to compel should be denied for this reason alone.

As the Supreme Court has recently re-affirmed, however, arbitrators – not courts – must decide whether a condition precedent to arbitrability has been fulfilled. BG Group PLC v. Republic of Arg., 134 S. Ct. 1198, 1207-08 (2014); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85-6 (2002).[14] Accordingly, the Franchisees' argument must be decided by the arbitrator, not the court. Should the arbitrator decide that the Franchisees have no duty to arbitrate because Dickey's failed to satisfy the mediation condition precedent, the parties may then seek relief in court under the FAA. See 9 U.S.C. §§ 9-

---

[14] Several circuits, including our own in an unpublished opinion, have refused to compel arbitration when the requesting party failed to comply with a precondition to arbitration. See Perdue Farms Inc. v. Design Build Contracting Corp., 263 F. App'x 380, 383 (4th Cir. 2008) ("Where a condition precedent to arbitration is not fulfilled, a party to a contract does not have a right to arbitration."); HIM Portland LLC v. Devito Builders Inc., 317 F.3d 41, 44 (1st Cir. 2003) (refusing to compel arbitration because "[u]nder the plain language of the contract, the arbitration provision of the agreement is not triggered until one of the parties requests mediation"); Kemiron-Atl. Inc. v. Aguakem Int'l Inc., 290 F.3d 1287, 1291 (11th Cir. 2002) (same). All of these cases either predate, conflict with, or do not consider Howsam and BG Group, however, and thus do not control here.

11 (providing procedure for parties to seek confirmation, vacatur, or correction of an arbitration decision). But that possibility is irrelevant at this stage in the proceeding.

3.

The Franchisees next argue that Article 29 "trumps" or "voids" the Arbitration Clause in its entirety. In support, they point to language in the agreements stating that the Maryland Clause applies "notwithstanding anything in th[e] Agreement in the contrary." J.A. 555. We disagree. At least as to the common law claims, the Arbitration Clause is not contrary to the Maryland Clause. Indeed, the common law claims do not implicate the Maryland Clause in the first instance, because that Clause only applies to claims "aris[ing] under Maryland Franchise law," and the Franchisor's claims clearly do not arise under that Law. J.A. 555. Read together then, the Arbitration and Maryland Clauses demonstrate that the parties agreed to arbitrate all disputes except for the narrow carve-out for Maryland Franchise Law claims as set forth in the Maryland Clause.[15]

---

[15] A similar analysis applies to the Chorleys' development agreement. The Maryland Addendum in the development agreement only requires Maryland venue for "any claim arising under the Maryland Franchise Registration and Disclosure Law." J.A. 597. The Franchisor's breach of contract claims do not arise under (Continued)

The Franchisees seek to conjure a conflict between the Maryland Clause and the Arbitration Clause by asserting that they will be forced to raise their Maryland Franchise Law claims as affirmative defenses in the arbitration. According to the Franchisees, a ruling in arbitration on their affirmative defenses under the Maryland Franchise Law could hypothetically have preclusive effect on the Maryland district court proceedings as to those claims. As the argument goes, such a ruling would effectively negate their right to bring suit in Maryland court under the Maryland Clause.

We reject this reasoning. As an initial matter, the Maryland Clause only states that the Franchisees have a right to "file a lawsuit" bringing Maryland Franchise Law claims in Maryland court; it does not say the Franchisees also have a right to bring all "affirmative defenses" based on the Maryland Franchise Law in court. By its plain language then, the Maryland Clause does not apply to the Franchisees' affirmative defenses. And as set forth above, where the Maryland Clause is not implicated, the Arbitration Clause controls.

---

that law. Accordingly, to the extent those claims are based on the development agreement, they may be arbitrated in Texas. Conversely, the Chorleys' Maryland Franchise Law claims under the development agreement may go forward in Maryland court, because the Maryland Addendum states that the Arbitration Clause is "void" as to those claims.

25

Moreover, the FAA requires the exact piecemeal litigation the Franchisees seek to avoid here, notwithstanding the potential for conflicting results. KPMG LLP v. Cocchi, 132 S. Ct. 23, 26 (2011) (per curiam) ("[W]hen a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); see also In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 285 (4th Cir. 2007) ("[F]ederal law requires piecemeal resolution when necessary to give effect to an arbitration agreement."). Accordingly, we will not determine the preclusive effect of a hypothetical award at this stage.

We note that if the parties had wanted to avoid potentially conflicting results – and thorny questions regarding the preclusive effect of a potential award[16] – they could have agreed

---

[16] Arbitration awards generally have the same preclusive effect as court orders, but only to the extent the parties agree that the issues could be decided in arbitration. Cf. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 222 (1985) ("[I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims."). As explained below, the Franchisees did not agree to arbitrate their Maryland Franchise Law claims. Thus, even if the arbitrator rejects the Franchisees' affirmative defenses, that ruling arguably may not preclude the district court from reaching a contrary result on the Maryland Franchise Law claims. (Continued)

on a single forum for all their claims.  But they did not.  We will not rewrite their agreements to save them from their own self-imposed, inefficient arbitration procedures.  Accordingly, we reverse with instructions for the district court to compel arbitration of the common law claims.

D.

Whether the parties also agreed to arbitrate the Franchisees' Maryland Franchise Law claims is another matter.

1.

Unlike the Franchisor's common law claims, the Franchisees' claims directly implicate the Maryland Clause.  Again, that Clause states that nothing in the agreements shall "require you to waive your right to file a lawsuit alleging a cause of action arising under Maryland Franchise Law in any court of competent jurisdiction in the State of Maryland."  J.A. 555.  Reading the Arbitration Clause as mandating arbitration of the Franchisees' Maryland Franchise Law claims would necessarily "require" them to "waive" their right to file such claims in a "court of competent jurisdiction in the State of Maryland."  By its plain

---

For the reasons set forth above, however, we will not decide this hypothetical question here.

27

language then, the Maryland Clause conflicts with the Arbitration Clause as to the Franchisees' Maryland Franchise Law claims. And because the Maryland Clause applies "notwithstanding anything in th[e] Agreement in the contrary," id., we conclude that it trumps the more general Arbitration Clause as to Maryland Franchise Law claims, thus allowing the Franchisees to file those claims in Maryland court.

2.

Dickey's disagrees, asserting that the Maryland Clause does not mean what it says. In its view, the Maryland Clause merely preserves the Franchisees' right to pursue a claim – in court or in an arbitration – under the Maryland Franchise Law. In support, Dickey's cites three cases purportedly holding that "words such as 'lawsuit,' 'sue' and 'court' do not negate [an] arbitration provision, but merely preserve[] the right of a franchisee to pursue a claim – in court or in arbitration – under Maryland Franchise Law." App. Br. at 32 (citing Holmes v. Coverall N. Am., 649 A.2d 365 (Md. 1994); Zaks v. TES Franchising, No. 3:01CV2266JBA, 2004 WL 1553611 (D. Conn. July 9, 2004); and CompuCredit, 132 S. Ct. at 669). Its reliance on these cases is misplaced. As set forth below, none of these cases addresses language even remotely similar to the Maryland Clause.

28

First, Holmes is readily distinguishable because it held only that the Maryland Franchise Law neither prohibits arbitration nor requires Franchise Law claims to be brought in Maryland. 649 A.2d at 368.[17] But the text of the Maryland Clause controls here, not the text of the Maryland Franchise Law. And the two are fundamentally different. Unlike the Maryland Franchise Law, the Maryland Clause does not merely use the words "sue" and "court" in creating a cause of action.[18] Instead, it expressly states that the "provisions of the Agreement," including the Arbitration Clause, "shall not require" the Franchisees to waive their "right to file a lawsuit alleging a cause of action arising under the Maryland Franchise Law in any court of competent jurisdiction in this State." J.A. 555.

In short, Holmes establishes that the Maryland Franchise Law grants franchisees a right to sue for violations of that Law, but does not say where that suit must take place; whereas

---

[17] Although Holmes addressed a predecessor version of the Maryland Franchise Law, the differences between it and the current version are minor and do not impact the analysis here.

[18] The Maryland Franchise Law's "Civil Liability" section grants a franchisee the right to "sue" under the Law to "recover damages sustained by the grant of the franchise," but does not state whether that suit must be brought in arbitration or in court. Md. Code Bus. Reg. § 14-227(b). It also states that a "court may order the person who sells or grants a franchise to: (1) rescind the franchise; and (2) make restitution to the person who buys or is granted a franchise." Id. § 14-227(c) (emphasis added).

29

the Maryland Clause goes one step further and expressly grants franchisees a right to file that suit in Maryland. Accordingly, neither Holmes nor the Maryland Franchise Law shed any light on the meaning of the Maryland Clause.

Dickey's next cites Zaks for the proposition that the Maryland Franchise Law does not prohibit arbitration. In doing so, Dickey's again conflates the Maryland Franchise Law with the Maryland Clause. Zaks is also inapposite because, unlike here, the parties there executed an addendum to their agreement expressly stating that the arbitration provision overrode any provision permitting suit in Maryland. Zaks, 2004 WL 1553611, at *2 ("Notwithstanding anything to the contrary in the Franchise Agreement to which this Addendum is attached, the following terms and conditions shall control: . . . The Franchise Agreement requires binding arbitration."). The opposite is true here: to the extent they conflict, the Maryland Clause controls "notwithstanding" the Arbitration Clause. J.A. 555.

Dickey's also contends that Compucredit, 132 S. Ct. at 669 construed language similar to that in the Maryland Clause. According to Dickey's, the Supreme Court held that statutory language purportedly prohibiting "the waiver" of "the right to sue" in "court actions" only established a private right of

action that could be brought in either arbitration or court. App. Br. at 36. Dickey's overstates Compucredit's holding.

In Compucredit, the Supreme Court considered whether a federal statute – the Credit Repair Organizations Act (CROA), 15 U.S.C. §1679 et seq. – precludes arbitration of claims alleging violations of that statute. The plaintiffs contended that "the right to sue" language in the CROA's disclosure provision, 15 U.S.C. § 1679c(a), created a right to sue in court, not arbitration. The Supreme Court disagreed, but not because, as Dickey's contends, that language could be read to permit arbitration. Instead, the Court held that the disclosure provision was entirely irrelevant because it does not "provide[] consumers with a right to bring an action in a court of law," but rather provides only "the right to receive the [disclosure] statement, which is meant to describe the consumer protections that the law elsewhere provides." 132 S. Ct. at 669-70. In contrast, the Maryland Clause does not merely provide notice of rights that are provided elsewhere; rather, as a contractual commitment, it expressly creates the right itself.[19]

---

[19] Upon concluding that § 1679c(a) was irrelevant, the Court then turned to the CROA's civil liability provision, § 1679g, which creates a private cause of action for violations of the statute. § 1679g uses terms like "action," "class action," and "court" in describing the cause of action. The Supreme Court concluded that this language only established a private right of action that could be brought in either arbitration or court. (Continued)

31

If anything, Compucredit supports the Franchisees' position that the parties were free to select a Maryland court forum, notwithstanding the default position that Maryland Franchise Law claims can be brought in arbitration:

> [J]ust as the contemplated availability of all judicial forums may be reduced to a single forum by contractual specification, so also can the contemplated availability of judicial action be limited to judicial action compelling or reviewing initial arbitral adjudication. The parties remain free to specify such matters, so long as the guarantee of [the CROA's civil liability provision]--the guarantee of the legal power to impose liability--is preserved.

132 S. Ct. at 671 (emphasis in original). In the same way, here, Dickey's and the Franchisees were free under the Maryland Franchise Law to arbitrate or litigate claims arising under the Law. But, by agreeing to the Maryland Clause, the parties expressly chose to litigate those claims in Maryland (while arbitrating all other claims in Texas). This choice is wholly consistent with Compucredit, which expressly notes that parties remain free to agree to forum-selection clauses, notwithstanding

---

This holding is analogous to Holmes – both the CROA and the Maryland Franchise Law use words like "court" and "action" in describing their respective private statutory causes of action. In contrast to the CROA and the Maryland Franchise Law, however, the Maryland Clause goes further and expressly states that Franchisees have the right to file a suit in "any court of competent jurisdiction in this State." Both the Maryland Franchise Law and the CROA lack this specific forum-selection language. Accordingly, Compucredit does not control this case.

civil liability provisions using words such as "court" and "action."

Finally, Dickey's argues that the Regulation does not prohibit arbitration, and therefore the Maryland Clause must not either. Again, we disagree. Although some of the language in the Clause tracks the Regulation, they are not identical. Both the Regulation and the Clause consist of a single sentence, but they differ in one fundamental respect: they contain different subjects. In the Regulation, the subject is the franchisor: it is the franchisor who may not require the franchisee to waive their litigation rights. But in the Clause, the subject is the agreement itself: the "provisions of the agreement" cannot be read to require that franchisees waive their litigation rights.

This distinction matters. As the district court held, when the subject is the "franchisor" as in the Regulation, the Franchisees remain free to agree to arbitrate Maryland Franchise Law claims – the Regulation only prohibits forced or involuntary waivers.[20] But when the subject is the "provisions of the

_____

[20] The district court made the distinction between voluntary and involuntary waivers in an effort to read the Regulation as consistent with the Maryland Franchise Law as required by Maryland administrative law principles. See J.A. 28 (citing Lussier v. Md. Racing Comm'n, 684 A.2d 804 (Md. 1996)). The district court made this distinction in the context of rejecting the Franchisees' argument that the Arbitration Clause conflicted with the Inconsistent Provisions Clause. The Franchisees do not rely on the Inconsistent Provisions Clause on appeal, however,
(Continued)

33

agreement" as in the Maryland Clause, the parties have already reached an agreement as to arbitration. And here, that agreement consists of both the Maryland and Arbitration Clauses, which demonstrate that the parties intended to arbitrate all claims except for Maryland Franchise Law claims.

Put differently, under the district court's interpretation of the Regulation, the Franchisees were free to waive their right to file suit in Maryland, as long as that waiver were voluntary. But the Maryland Clause demonstrates that the Franchisees did not agree to waive that right in the first instance, at least as to their Franchise Law claims. Rather, both parties agreed to litigate those claims in Maryland. Accordingly, we will not compel arbitration of the Franchisees' Maryland Franchise Law claims.

3.

Alternatively, Dickey's contends that if the Maryland Clause does prohibit arbitration of the Franchisees' claims, then the Clause is preempted by the FAA. The district court did not reach this issue because it referred the threshold arbitrability question to a jury. Because we have decided this

_____

so we need not determine whether the district court's distinction between voluntary and involuntary waivers was correct.

34

question in the Franchisees' favor as a matter of law, we will address this alternative preemption argument here.

It is well established that the FAA "pre-empts application of state laws which render arbitration agreements unenforceable." Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 472 (1989). Thus, where "state law prohibits outright the arbitration of a . . . claim . . . [t]he conflicting rule is displaced by the FAA." Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 1203-1204 (2012) (citing AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1747 (2011)); Saturn Distr. Corp. v. Williams, 905 F.2d 719, 722 (4th Cir. 1990).

Our decision in Saturn is particularly instructive. There, Saturn — an automobile distributor — brought an action for declaratory and injunctive relief, claiming that the FAA preempted a Virginia statute prohibiting arbitration of claims arising out of auto dealership agreements. 905 F.2d at 721. Saturn submitted its dealer agreement to the Virginia Commissioner of the Department of Motor Vehicles, but the Commissioner refused to approve it in light of its arbitration clause. We concluded that the Virginia statute plainly conflicted with the FAA and was thus preempted. Id. at 722.

Unlike in Saturn, however, the Maryland Clause is not a state law prohibiting arbitration. Rather, it is a contractual provision prohibiting arbitration. And it is generally well-

35

settled that when a "party to a contract voluntarily assumes an obligation to proceed under certain state laws, traditional preemption doctrine does not apply to shield a party from liability for breach of that agreement." Epps v. JP Morgan Chase Bank, N.A., 675 F.3d 315, 326 (4th Cir. 2012) (citing Am. Airlines v. Wolens, 513 U.S. 219, 228 (1995)); see also Coll. Loan Corp. v. SLM Corp., 396 F.3d 588, 598 (4th Cir. 2005) (where parties to an agreement voluntarily assume federal standards in their bargained-for private contract, a party's argument that enforcement of the agreement is preempted by that federal law "boils down to a contention that it was free to enter into a contract that invoked a federal standard as the indicator of compliance, then to proceed to breach its duties thereunder and to shield its breach by pleading preemption. . . . [F]ederal supremacy does not mandate such a result.").[21]

---

[21] Dickey's contends that these cases establish that "state-mandated contract provisions are preempted if they contravene federal law." App. Br. at 51. None of these cases actually held as much. Instead, they held only that parties cannot incorporate state law in their agreements, and then later seek to shield themselves from that law by pleading preemption. They did not address the inverse scenario — that is, whether state-imposed contractual commitments are preempted. The Franchisor's citation to Wells Fargo Home Mortg., Inc. v. Neal, 922 A.2d 538 (Md. 2007), is particularly misplaced, because that decision does not even address preemption. Rather, it decided only whether a borrower could bring a breach of contract claim based on a lender's purported failure to comply with federal regulations allegedly incorporated in the borrower's deed of trust. And even if Neal did support the Franchisor's argument, (Continued)

36

As the Third Circuit recently recognized, these cases have a "salutary 'you've made your own bed, now lie in it'" quality. Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc., 781 F.3d 656, 667-68 (3d Cir. 2015).

Although none of these cases address FAA preemption, their reasoning applies equally here. FAA preemption prevents states from carving out wholesale exceptions to arbitration. See Concepcion, 131 S. Ct. at 1747. It does not prevent private parties from agreeing to litigate, rather than arbitrate, specific claims. Again, the parties were free under Maryland Franchise Law to either arbitrate or litigate the Franchisees' claims. See Holmes, 649 A.2d at 368; see also Muriithi, 712 F.3d at 179 (compelling arbitration of Maryland Franchise Law claims). As set forth in the Maryland Clause, they agreed to litigate the Maryland Franchise Law claims in Maryland. Nothing in the FAA preempts or prohibits the parties from making that choice.

Dickey's argues this law does not apply because it did not voluntarily include the Maryland Clause in the agreements. Rather, Dickey's asserts that both Maryland law and the Maryland Commissioner of Securities forced it to include the Clause in

---

preemption is a matter of federal not state law, and so Neal does not control here.

37

the agreements as a condition precedent to doing business in Maryland.[22] We disagree. Dickey's was not forced to do anything. If Dickey's did not want to include the Maryland Clause, it had several options. It could have simply declined to do business in Maryland. Or, like the dealer in Saturn, it could have filed a declaratory action challenging the Maryland Commissioner of Securities' position <u>before</u> including the Maryland Clause in its agreements. <u>See</u> <u>Saturn</u>, 905 F.2d at 721; <u>see also</u> <u>Sec. Indus. Assoc. v. Connolly</u>, 883 F.2d 1114 (1st Cir. 1989) (finding that FAA preempted state law which was required to be incorporated in contracts, but only where challengers sued for a declaratory order <u>before</u> incorporating the provision in their contracts).

Dickey's did neither, however. Instead, it chose to add the Maryland Clauses to its agreements so that it could reap the benefits of conducting its franchise business in Maryland. It then waited nearly two years after including the Maryland Clause in its franchise agreements before challenging the state's purported required inclusion of them. Simply put, Dickey's had

[22] In support, Dickey's cites a declaration executed by the attorney who drafted the franchise agreements. Neither the declaration nor the parties' briefing cites the applicable law mandating inclusion of the Maryland Clause in the agreements, and our research has not revealed any such law. The parties also dispute whether the declaration constitutes inadmissible hearsay. Because we conclude the declaration is irrelevant in the first instance, we need not address these issues.

multiple options other than agreeing to the Maryland Clause.  In this scenario, we are comfortable holding Dickey's to the terms of the agreements.

## IV.

Finally, Dickey's requests that we stay the Franchisees' Maryland Franchise Law claims in the district court pending conclusion of the arbitration on its common law claims.  The district court did not decide this issue because it did not decide whether arbitration should proceed at all.  Whether to grant such a stay is a matter within the district court's discretion, Am. Recovery Corp., 96 F.3d at 97, so we leave it to the district court to decide this matter in the first instance on remand.

## V.

For the foregoing reasons, we vacate the district court's order and remand for further proceedings.

VACATED AND REMANDED