WYNN, Circuit Judge,
dissenting:
The question at the heart of this appeal is whether the parties formed a written agreement to arbitrate. Santander says yes, pointing to a (problematic) amendment document with an arbitration clause; Galloway says no, declaring that the operative modification contract was never reduced to writing. In short, the parties dispute a material fact: whether they entered into a written agreement to submit disputes to arbitration. It therefore cannot accurately be said that “[t]he pertinent facts in this case are undisputed.” Ante at 81. A jury — not á court — should resolve this dispute. .Accordingly, 1 dissent.
I.
Galloway, a Maryland consumer, bought a car in 2007, and her loan was initially assigned to CitiFinancial. Under the financing contract, Galloway was .required to make 72 monthly payments of $487.46. J.A. 19. The original contract contained no arbitration provision. It did, however, include a provision requiring changes to be in writing and signed to be binding: “Any change to this contract must be in writing and we must sign it. No oral changes are binding.” J.A. 20 (emphasis added). No one disputes the original contract’s validity.
The same cannot be said of a purported amendment to the agreement dating to 2008: The dispute surrounding its validity is at the center of this appeal. Galloway contacted CitiFinancial and requested that her monthly payments be reduced. In response, CitiFinancial sent Galloway a fax letter and an “Amendment Agreement” and instructed her to sign the “Amendment Agreement” and return it to CitiFinancial for , “review, approval and consideration.” J.A. 25. The “Amendr ment Agreement” proposed monthly payments of $365.57.- and .included an arbitration provision. J.A. 26.
Galloway signed the Amendment Agreement and faked it back to CitiFinancial; But CitiFináncial never signed the Amendment Agreement. And for months, Galloway made, and CitiFinancial, and later its assignee Santander, the defendant here, *91 accepted monthly payments of $366.43— not the $365.57 in the Amendment Agreement. In fact, Santander’s spreadsheet for Galloway’s account listed as her requisite payment amount “$366.43” — not the $365.57 in the Amendment Agreement.
Ultimately, Galloway failed to make her monthly payments, and Santander repossessed and sold her car. Galloway sued in Maryland state court, alleging that San-tander failed to give notice as required under the Credit Grantor Closed End Credit Provisions of the Maryland Credit Deregulation Act. Galloway also declared in an affidavit that CitiFinancial “told me that the paperwork provided to me was not pre-approved ... and that someone within CitiFinancial would have to approve my request before it became effective.” J.A. 16 (emphasis added).
Galloway further declared, under penalty of perjury, that “CitiFinancial did not accept the terms of the executed Amendment Agreement ” and that “[tjhe agreement between myself and CitiFinancial ... which lowered my payments to $366.43 each month was not evidenced by a writing.” J.A. 17 (emphasis added).[1] Santander proffered no evidence affirmatively refuting Galloway’s statements, instead declaring that it had simply “relied upon the accuracy of the [original financing contract] and the Amendment Agreement.” J.A. 31.
Santander removed the case to federal court and then moved to compel arbitration. The district court granted the motion, holding that a written arbitration agreement existed.
II.
Where a party “show[s] genuine .issues of material fact regarding the existence of an agreement to arbitrate,”, a standard we have likened to “the burden on summary judgment,” that party is entitled -to a jury trial- on the issue. Chorley Enters. v. Dickey’s, 807 F.3d 553, 564 (4th Cir.2015). And we review a district court’s judgment compelling arbitration de novo. Santoro v. Accenture Fed. Servs., LLC, 748 F.3d 217, 220 (4th Cir.2014).
In my view, this case presents a straightforward -factual dispute entitling Galloway to a jury trial. Galloway contends that the amendment to the original contract was not reduced to writing. Evidence supporting Galloway’s version of the facts includes: (1) her sworn statement, including her averment that “[t]he agreement between myself and CitiFinancial ... which lowered my payments to $366.43 each month was not evidenced by a writing,” J.A. 17; (2) the fact that the actual amount of Galloway’s lowered payments differed from the amount stated in the purported Amendment Agreement; (3) Santander’s admission in its declaration that it simply relied on the accuracy of the documents; (4) the fact that the.original contract clearly contemplated non-written amendments — because it stated that only written and signed amendments would be binding; and (5) the fact that CitiFinancial never signed the. Amendment Agreement as required under the original contract.
Santander, by contrast,.contends that in sending Galloway the Amendment Agreement — which required “review, approval and consideration” by CitiFinancial, J.A. 25 — CitiFinancial made Galloway an offer, which she accepted when she faxed the signed document back. Santander- also argues, for example, that the difference in amount between the payments Galloway actually made and- the payments she was *92 required to make under the Amendment Agreement was simply de minimis and that the discrepancy was either ratified or waived.[2] While Santander’s arguments may not all be frivolous,[3] I simply cannot agree that they lead to the conclusion that “CitiFinancial could only be reasonably understood to be proposing a very minor tweak to the terms that it had originally suggested and that Galloway had already indicated she would accept.” Ante at 86.
Instead, this is a classic case of he said/ she said. Galloway claims that the parties’ ultimate agreement to lower her monthly payments was never reduced to writing. Santander claims that the Amendment Agreement document constitutes the operative agreement to reduce payments. Without doubt, what the parties agreed to — and whether it is memorialized by a writing — is material. It is plainly disputed. And it is a question for the jury, not the courts.
III.
Where a party “show[s] genuine issues of material fact regarding the existence of an agreement to arbitrate,” that party is entitled to a jury trial. Chorley Enters., 807 F.3d at 564. In my view, Galloway has done just that — shown a material fact in dispute. She is entitled to have a jury decide the dispute. With much respect to my colleagues in the majority, I therefore dissent.

. I am confounded by the way in which the majority opinion invokes waiver here. Plainly. "[t]he parties left no doubt that they intended to modify the terms of the RISC, even in the absence of a signed writing to which they agreed.” Ante at 88. And indeed, Galloway does not contest that the parties agreed to a modification; she instead contests how they did so, disputing that the modification took the form of a written document containing an arbitration provision. Waiver is thus plainly misplaced and certainly does not lead to the conclusion that "the district court properly concluded that the arbitration agreement was a term of the contact that the parties entered into.” Ante at 88-89.

. I agree with the majority’s rejection of San-tander’s argument that, in faxing the Amendment Agreement to Galloway, CitiFinancial made her an offer. I also note that not a single reported Maryland case engages in the "de minimis” analysis featured in Santander's brief and the court’s analysis. On the contrary, the case law suggests that any discrepancy between an offer and a purported acceptance results in no contract being formed. See, e.g., Learning Works, Inc. v. The Learning Annex, Inc., 830 F.2d 541, 543 (4th Cir.1987) ("Maryland law, which applies in this case, requires unqualified acceptance of an offer before a contract can be formed.” (citations omitted)).