**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2167**

LEILONNI DAVIS,

          Plaintiff - Appellee,

   and

ASHLEY SAFRIT; LAUREN WILSON,

          Plaintiffs,

   v.

TMC RESTAURANT OF CHARLOTTE, LLC, d/b/a The Men's Club,

          Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:18-cv-00313-RJC-DCK)

Submitted: April 8, 2021                       Decided: May 7, 2021

Before MOTZ, KEENAN, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Matthew J. Hoffer, SHAFER & ASSOCIATES, P.C., Lansing, Michigan; Joseph L. Ledford, Charlotte, North Carolina, for Appellant. Philip J. Gibbons, Jr., Craig L. Leis,

Geoffrey A. Marcus, GIBBONS LEIS, PLLC, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Leilonni Davis, Ashley Safrit, and Lauren Wilson filed in the district court a putative class action lawsuit against their former employer, TMC Restaurant of Charlotte, LLC, doing business as The Men's Club ("TMC"). TMC moved to dismiss or stay the lawsuit in favor of arbitration. On the magistrate judge's recommendation, the district court granted the motion as to Safrit and Wilson's claims but denied the motion as to Davis' claims. TMC appeals the district court's partial denial of its motion, arguing that (1) the threshold issue of arbitrability should have been decided by the arbitrator, and (2) alternatively, that the district court should have held a jury trial on the issue of arbitrability. We affirm.[*]

"The question of who decides arbitrability—the court or the arbitrator—is one we review de novo." *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020). There is a presumption that the court decides issues of arbitrability, but this presumption can be rebutted by "clear and unmistakable" evidence that the parties agreed that the arbitrator would make such a determination. *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012). A contract provision stating an agreement to arbitrate arbitrability, known as a "delegation provision" or a "delegation clause," can be sufficiently clear and unmistakable evidence of the parties' intention to delegate the issue to an arbitrator. *Gibbs*, 967 F.3d at 337. "However, if the claimant

---

[*] We have appellate jurisdiction over this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(A) (providing that appeal may be taken from interlocutory order refusing to stay action pending arbitration).

3

specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.*

In response to TMC's motion to dismiss or stay the lawsuit in favor of arbitration, Davis claimed that she had not entered into any arbitration agreements. This claim "necessarily includ[ed] the delegation provision, which is simply an additional, antecedent agreement to arbitrate." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017) (internal quotation marks omitted). We therefore conclude that Davis sufficiently attacked the validity of the delegation provision and that the district court did not err when it considered the issue of arbitrability. *See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (4th Cir. 2019) ("[P]rovisions requiring the arbitration of arbitrability questions do not . . . preclude a court from deciding that a party never made an agreement to arbitrate *any* issue (which would necessarily encompass an arbitrability issue).").

TMC next argues that—even if the district court had the authority to decide arbitrability—it should only have done so following a jury trial. We disagree. Under the Federal Arbitration Act, 9 U.S.C. § 4, parties are entitled to a jury trial on the issue of arbitrability only if they can "show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (internal quotation marks omitted). "[T]his standard is akin to the burden on summary judgment." *Id.* at 85 n.3 (internal quotation marks omitted). "Not just any factual dispute will do. Rather, the party requesting a jury trial under [9 U.S.C. § 4] must provide sufficient evidence in support of its claims such that a reasonable jury could return

4

a favorable verdict under applicable law." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).

"[W]e apply the ordinary state-law principles that govern the formation of contracts in reviewing a challenge under § 4." *Berkeley*, 944 F.3d at 236 (internal quotation marks omitted). Here, the parties agree that North Carolina law applies. *See id.* (applying state law agreed upon by parties in deciding arbitration issue); *Galloway*, 819 F.3d at 85 (same). Under North Carolina law, "[t]he well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Se. Caissons, LLC v. Choate Constr. Co.*, 784 S.E.2d 650, 654 (N.C. Ct. App. 2016). "Mutual assent is normally established by an offer by one party and an acceptance by the other." *Creech v. Melnik*, 495 S.E.2d 907, 912 (N.C. 1998). North Carolina recognizes implied-in-fact contracts, which "arise[] where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Id.* at 911. However, "[t]here is no meeting of the minds, and, therefore, no contract, when in the contemplation of both parties something remains to be done to establish contract relations." *Parker v. Glosson*, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007) (ellipses and internal quotation marks omitted).

It is undisputed that TMC does not possess an arbitration agreement signed by Davis. TMC claims, however, that Davis implicitly assented to the agreement by continuing in her employment after learning of the agreement's existence. TMC is correct that an arbitration agreement need not always be signed and that, under North Carolina law, continued employment after receiving notice of a dispute resolution plan can signify

5

acceptance of that plan. *See e.g.*, *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241-42 (4th Cir. 2001). However, TMC admits that, in the instant case, it instructed its employees not that it was instituting a general dispute resolution plan that would become effective on a date certain but, instead, that the employees were required to sign and return individual arbitration agreements. We therefore agree with the district court's assessment that—even accepting as true TMC's version of events—Davis' continued employment did not constitute acceptance of TMC's offer because there was no mutual assent. *See Parker*, 641 S.E.2d at 737 ("[W]hen negotiating parties make it clear that they do not intend to be bound by a contract until a formal written agreement is executed, no contract exists until that time."). Accordingly, the district court properly denied TMC's request for a jury trial because TMC did not establish any genuine issues of material fact regarding the existence of an agreement to arbitrate.

We affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*