23-286
*The Resource Group International Limited et al. v. Chishti*

In the
United States Court of Appeals
for the Second Circuit

————————————

August Term 2023
Argued:  September 18, 2023
Decided:  January 22, 2024

No. 23-286

————————————

THE RESOURCE GROUP
INTERNATIONAL LIMITED, TRG
PAKISTAN LIMITED,
MOHAMMED KHAISHGI,
HASNAIN ASLAM,
*Plaintiffs-Appellants*,
v.
MUHAMMAD ZIAULLAH KHAN CHISHTI,
*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of New York
No. 23-1760, Louis L. Stanton,
District Court Judge.

————————————

Before:  CALABRESI, LEE, and PÉREZ, *Circuit Judges*.

On appeal from an order of the United States District Court for the Southern District of New York (Stanton, *J.*).

This appeal arises from a dispute as to the propriety of pending arbitration proceedings.  The Plaintiffs-Appellants seek to avoid arbitration, while Defendant-Appellee seeks to enforce what he contends to be a valid arbitration agreement to resolve his claims against Plaintiffs-Appellants.  This case asks the Court to

determine: first, whether it has jurisdiction under New York state law, notwithstanding Section 16 of the Federal Arbitration Act; then, if it does, whether an agreement to arbitrate is superseded by a later-executed release agreement containing a forum selection clause that does not specifically mention arbitration; and finally, the circumstances under which improperly being forced to arbitrate can satisfy the irreparable harm prong of the preliminary injunction inquiry.

Plaintiffs-Appellants The Resource Group International Limited, TRG Pakistan Limited, Mohammad Khaishgi, and Hasnain Aslam appeal from an order entered by the district court denying their motion for a preliminary injunction. The TRGI Plaintiffs sought to enjoin ongoing arbitration proceedings brought against them by Defendant-Appellee Muhammad Ziaullah Khan Chishti, the former Chairman and director of TRGI and former CEO and director of TRGP. The district court denied the preliminary injunction, concluding that the TRGI Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims and that they would be irreparably harmed in the absence of emergency relief.

We hold that: (1) this Court has jurisdiction over this appeal; and (2) the district court relied on an erroneous view of the law in concluding that the TRGI Plaintiffs failed to demonstrate both a likelihood of success on the merits of their claims and irreparable harm absent a preliminary injunction. In particular, the district court erroneously concluded that the Release Agreement likely did not supersede the relevant Stock Purchase Agreement and, as a result, failed to determine the scope of the Release Agreement or otherwise identify which claims are arbitrable in the first instance for purposes of ruling on the preliminary injunction request. The district court also erred in concluding that being forced to arbitrate an inarbitrable claim cannot constitute irreparable harm. As a result, for the reasons set forth below, we **VACATE** the district court's order and **REMAND** the case to the district court for further proceedings.

MARK E. MCDONALD, Cleary Gottlieb Steen & Hamilton LLP (Jeffrey A. Rosenthal, Lisa Vicens, Cleary Gottlieb Steen & Hamilton LLP, New York, NY; S. Gale Dick, Christine M. Jordan, Cohen & Gresser LLP, New York, NY, on the brief), New York, NY, *for Plaintiffs-Appellants*.

JOHN SULLIVAN, Cozen O'Connor, New York, NY, *for Defendant-Appellee*.

MYRNA PÉREZ, *Circuit Judge*:

This appeal arises from a dispute as to the propriety of pending arbitration proceedings. The Plaintiffs-Appellants seek to avoid arbitration, while Defendant-Appellee seeks to enforce what he contends to be a valid arbitration agreement to resolve his claims against Plaintiffs-Appellants. This case asks the Court to determine: first, whether it has jurisdiction under New York state law, notwithstanding Section 16 of the Federal Arbitration Act; then, if it does, whether an agreement to arbitrate is superseded by a later-executed release agreement containing a forum selection clause that does not specifically mention arbitration; and finally, the circumstances under which improperly being forced to arbitrate satisfies the irreparable harm prong of the preliminary injunction inquiry. For the

reasons set forth below, we **VACATE** the district court's order and **REMAND** the case to the district court for further proceedings.

## I.   Prior Proceedings

Before the Court is an appeal from the district court's denial of a motion for a preliminary injunction brought by Plaintiffs-Appellants The Resource Group International Limited ("TRGI"), TRG Pakistan Limited ("TRGP"), Mohammed Khaishgi, and Hasnain Aslam (together, the "TRGI Plaintiffs").   The TRGI Plaintiffs sought to enjoin a JAMS arbitration proceeding brought against them by Defendant-Appellee Muhammad Ziaullah Khan Chishti, the former Chairman and director of TRGI and former CEO and director of TRGP.

### A. The Parties

TRGI is a Bermuda-based holding company that invests in technology companies; TRGP is TRGI's largest shareholder affiliate and is based in Pakistan. In 2005, TRGI received an outside investment of $30 million from a group of entities, including an investment fund affiliated with American International Group, Inc. ("AIG") now known as Pinebridge Global Emerging Markets Fund II, L.P. ("GEM II").  TRGI, TRGP, and their management, including Chishti, entered into a Preferred Stock Purchase Agreement ("SPA"), which governed the terms of

the investment with GEM II, and other AIG affiliates—collectively, the "2005 Purchasers." Under the agreement, GEM II and the AIG affiliates received shares of TRGI stock. The SPA included an arbitration provision providing that:

> *All disputes and controversies arising under or in connection with this Agreement shall be settled by arbitration* conducted in accordance with the arbitration procedures described in this [Arbitration Section]. . . . [T]he arbitration procedures described in this Section . . . *shall be governed by, and shall be enforceable pursuant to, the Uniform Arbitration Act* as in effect in the State of New York from time to time.

App'x at 212 (emphasis added). The SPA also required Chishti to vote his TRGP shares in a manner that placed two people chosen by GEM II on TRGP's board.

In November 2021, Chishti resigned from his positions at TRGI and TRGP shortly after sexual assault allegations against him became public. Subsequently, in January 2022, in advance of a TRGP board election, concerns arose that Chishti would fail to comply with his obligation under the SPA to vote for two GEM II directors and would instead nominate a list of directors that included himself and his relatives. To prevent that from occurring, GEM II and the AIG affiliates agreed to waive stock transfer restrictions in the SPA and consent to the repurchase of Chishti's shares, on the conditions that: (1) GEM II's nominees be elected to the TRGP Board at the January 2022 meeting in accordance with Chishti's obligations under the SPA; and (2) Chishti execute a Release Agreement with Gem II and

affiliates. The Release Agreement required that Chishti refrain from commencing litigation or other proceedings against TRGI and certain other parties.

**B. Arbitration and Federal Suit**

In February 2023, Chishti initiated an arbitration action against the TRGI Plaintiffs and others not involved in this appeal (the "JAMS Arbitration"). He alleged breach of contract and fiduciary claims both individually and derivatively on behalf of TRGI and TRGP, including that the TRGI Plaintiffs had used his resignation as an opportunity to seize control of both companies. He specifically claimed that the TRGI Plaintiffs had breached the SPA and their fiduciary duties to shareholders when they: (1) amended the SPA to enlarge TRGI's board; (2) failed to pay TRGI's excess income as dividends to shareholders in December 2021 and instead used its subsidiary to purchase TRGP shares on the open market; (3) failed to make the appropriate public disclosures under Pakistani law in the wake of the December 2021 board vote; and (4) used the purchase of TRGP shares to coordinate a profitable selloff of their own positions in TRGP.

On March 1, 2023, the TRGI Plaintiffs filed suit in the district court, asserting that Chishti breached the Release Agreement. In addition, the TRGI Plaintiffs sought: (1) declaratory judgments stating that the Release Agreement superseded

6

the SPA's arbitration provision, Chishti's claims were barred, and his derivative claims were not arbitrable; and (2) a temporary restraining order and a preliminary injunction staying the arbitration proceedings. The district court denied the preliminary injunction, finding that the TRGI Plaintiffs had failed to show a likelihood of success on the merits of their claims and how they would be irreparably harmed were the emergency relief not granted. The TRGI Plaintiffs filed this timely appeal.

**II.  Discussion**

**A. Jurisdiction**

Before turning to the merits of the TRGI Plaintiffs' appeal, the Court must first consider whether it has jurisdiction over the appeal in the first place. We find that it does.

1.  Non-Applicability of Section 16 of the FAA

In general, this Court has jurisdiction to review interlocutory appeals from the denial of an injunction under 28 U.S.C. § 1292(a)(1). However, Section 16 of the Federal Arbitration Act ("FAA") limits the Court's authority to review interlocutory appeals by providing that "an appeal may not be taken from an interlocutory order . . . refusing to enjoin an arbitration that is subject to [the FAA]." 9 U.S.C. § 16(b)(4); *see also Accenture LLP v. Spreng*, 647 F.3d 72, 74 (2d Cir.

7

2011) (holding that under Section 16(b)(4) of the FAA, there is no appellate jurisdiction over district court orders "refusing to enjoin an arbitration"). Section 16's constraint on appellate jurisdiction, however, is not absolute because the Supreme Court has held that parties may "specify by contract the rules under which th[e] arbitration will be conducted," including "state rules of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). In other words, the FAA does not "prevent[] the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself." *Id.*

The relevant choice of law text in the SPA states: "the arbitration procedures described in this Section [] and any Final Arbitration Award (as defined below) shall be governed by, and shall be enforceable pursuant to, the *Uniform Arbitration Act as in effect in the State of New York from time to time*." App'x at 212 (emphasis added). The parties make two incorrect contentions regarding the application of New York law. First, in arguing that this SPA language does not indicate the parties' choice to apply New York law, Chishti makes too much of the fact that New York has never enacted the Uniform Arbitration Act. Second, the TRGI Plaintiffs incorrectly contend that we are to apply federal procedural law to this

8

litigation, rather than New York state law, to determine whether we have jurisdiction over the appeal. We address both arguments in turn.

### a. Reference to the Uniform Arbitration Act

The parties disagree on the implications of the reference to the "Uniform Arbitration Act," as—although New York does have a body of arbitration laws— there is no "Uniform Arbitration Act" in effect in New York.

In this case, it is clear at the very least that the parties opted out of the FAA and expressly elected New York state law to govern any arbitration procedures and awards between them through their SPA. The Court acknowledges that the SPA references "the Uniform Arbitration Act as in effect in the State of New York," even though New York has not enacted a version of the Uniform Arbitration Act. App'x at 212. However, the Court declines Chishti's invitation to consider this language grounds for rendering the SPA's arbitration clause as one that suggests the application of the FAA.

"The cardinal principle for the construction and interpretation of . . . all contracts—is that the intentions of the parties should control." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006) (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986)). Under

9

New York law, courts determine intent by looking at "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1977). "The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect." *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) (citations omitted).

Here, the provision in the SPA specifies the applicability of a body of arbitration law that is consistent with what would be applied in New York State. What seems most pertinent in giving effect to the parties' intentions and all the words in the provision is a reading consistent with applying the arbitration law of New York, not one that would require imposing federal arbitration law onto the plain text. Thus, under New York State's contract interpretation principle and practice (which separately governs the SPA broadly), the most natural reading is that the arbitration laws of New York State are to govern, at least, the arbitration

procedures and awards—whether they are formally titled the "Uniform Arbitration Act" of the State or not.[1]

Despite the imprecise language of the SPA's arbitration clause, the Court therefore concludes that the reference to "the Uniform Arbitration Act as in effect in the State of New York" evinces the parties' clear intent to arbitrate claims under New York's existing arbitration law.

### b. *Jurisdiction as a Substantive Question*

Given that choice of law as to the issue of appellate jurisdiction is in question here, we must address *Erie's* fundamental principle as a threshold matter. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938) (standing for principle that federal courts are to apply federal, not state, procedural law in diversity cases); *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal

---

[1] Notably, New York's arbitration statute, N.Y. C.P.L.R. art. 75, was largely consistent with the revised version of the Uniform Arbitration Act that was in existence, though not formally adopted by New York, at the time the SPA was created. *See* New York State Bar Ass'n Committee on Alternative Dispute Resolution, *Report on the Revised Uniform Arbitration Act* (2003), https://archive.nysba.org/WorkArea/DownloadAsset.aspx?id=26856 ("Most of the [Revised Uniform Arbitration Act ("RUAA")] codifies what is already New York law under court decisions and CPLR Article 75. For all the differences in *form* that would result from the replacement of Article 75 with the RUAA, the RUAA has relatively few provisions that would actually alter New York law."). This supports that even if some version of the UAA, rather than New York's arbitration law, was intended to govern arbitrations arising out of the SPA, the actual substance of the applied law likely would not vary in any meaningful way.

11

courts sitting in diversity apply state substantive law and federal procedural law.").

But the question of jurisdiction here is substantive in nature. Indeed, the Supreme Court has provided some guidance on this issue, recognizing that statutes that "create[] jurisdiction where none previously existed . . . speak[] not just to the power of a particular court but to the substantive rights of the parties as well." *Hughes Aircraft Co. v. United States ex. rel. Schumer*, 520 U.S. 939, 951 (1997) (emphasis removed). Although neither we nor the Supreme Court has answered the specific question before us, a provision within a statute that *withholds* jurisdiction where it would otherwise have existed, such as Section 16 of the FAA, seems aptly to also "speak[] . . . to the substantive rights of the parties" by denying them a right to appeal that they otherwise would have. *Id.* We therefore conclude that the relevant provision in the FAA (withholding appellate jurisdiction) and Article 75 of New York's Civil Practice and Rules (granting appellate jurisdiction), are both substantive provisions. As a result, contrary to the TRGI Plaintiffs' assertions, application of New York arbitration law bearing on appellate jurisdiction for denials of preliminary injunction, does not run afoul of *Erie*'s

fundamental principle that federal courts are not to apply state procedural law. *See Erie*, 304 U.S. at 78–80.

Having concluded that the parties intended and expressly elected New York state law to govern arbitrations between them and, further, that jurisdiction in this case is a substantive question allowing for the application of state law, we hold that the arbitration proceedings are therefore governed by New York state law and not "subject to" the FAA's restrictions on appellate review.

### 2. Application of New York State Law

Next, we consider whether New York state law permits appeals from the denial to enjoin arbitration, which would allow this Court to exercise jurisdiction over this appeal. We find that it does. Unlike the FAA, New York state law allows for an appeal of an order refusing to enjoin an arbitration.[2] New York state law allows a party to "apply to stay arbitration on the ground that a valid agreement

---

[2] The Court notes that the Supreme Court in *Volt* recognized that "state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Volt*, 489 U.S. at 477 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). In particular, the Supreme Court stated that the FAA preempts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," but otherwise does not "prevent[] the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself." *Id.* at 478–79 (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). Here, the laws of the state of New York are not at odds with the purposes and objectives of the FAA, as they do not oppose arbitration. And whether the parties did in fact agree to arbitrate is precisely at issue in light of the Release Agreement. The parties' SPA therefore falls squarely within the category of "agreements to arbitrate under different rules than those set forth in the [FAA] itself" (i.e., agreements that the *Volt* court found the FAA does not preempt). *Id.* at 479.

was not made or has not been complied with."  N.Y. C.P.L.R. § 7503(b) (McKinney 2005).  And under New York state law, a decision granting or denying a stay of arbitration, such as the district court's order here, is an appealable final order.  *See* N.Y. C.P.L.R. § 5501(a) (McKinney 1997); *see also Flanagan v. Prudential-Bache Sec., Inc.*, 495 N.E.2d 345, 347 n.* (N.Y. 1986); *Application of Nationwide Mut. Ins. Co.*, 241 N.Y.S.2d 589, 597 (Sup. Ct. 1962) (holding that order denying motion for stay of arbitration was an appealable "final order").  As a result, this appeal is permissible, and this Court has jurisdiction over the appeal.

**B.  Preliminary Injunction**

A plaintiff seeking a preliminary injunction must show: (1) "a likelihood of success on the merits"; (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) "that the public interest would not be disserved by the issuance of [the] injunction."  *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (citation and internal quotation marks omitted).  We review the denial of a motion for a preliminary injunction for abuse of discretion.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016).  "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous

14

assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) (quoting *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)). We review de novo the district court's resolution of questions of law implicated in a request for a preliminary injunction. *Lusk v. Village of Cold Spring*, 475 F.3d 480, 484 (2d Cir. 2007).

Here, the district court relied on an erroneous view of the law in concluding that the TRGI Plaintiffs: (1) were unlikely to succeed on the merits of their claims; and (2) failed to demonstrate that they would suffer irreparable harm.

## 1. Likelihood of Success on the Merits

First, the district court's conclusion that the TRGI Plaintiffs were unlikely to succeed on the merits of their claims is contrary to our precedent. The Release Agreement provides for "the *exclusive jurisdiction* of the state and United States federal courts located in the *state of New York*" (the "Forum Selection Clause") and states that "[t]his letter agreement and the other writings referred to herein or delivered pursuant hereto *constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior arrangements or understandings*" (the "Merger Clause"). App'x at 40 (emphasis added). The

15

Release Agreement, by way of its Forum Selection and Merger Clauses, supersedes the Stock Purchase Agreement's arbitration clause as it relates to the subject matter of the Release Agreement.

The district court proffered a contrary conclusion and determined that the SPA arbitration clause was controlling because the Release Agreement did not "mention agreements to arbitrate." Special App'x at 29. But such reasoning erroneously overlooks our precedent on this issue. "In this Circuit, an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration, but there is no requirement that the forum selection clause [definitively] mention arbitration." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (citations omitted). In fact, this Court has interpreted substantially similar release agreements as containing exclusive forum selection clauses—even where the parties' release agreement, like here, did not explicitly discuss arbitration. *See, e.g.*, *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 121, 133–34 (2d Cir. 2011) (affirming injunction of arbitration of claims released in agreement failing to mention arbitration); *Goldman, Sachs & Co.*, 764 F.3d at 215 (affirming injunction of an arbitration based on exclusive forum selection clause); *Merrill Lynch, Pierce,*

*Fenner & Smith Inc. v. Oliver*, 681 F. App'x 64, 66 (2d Cir. 2017) (summary order) (affirming injunction of arbitration of claims released in agreement failing to mention arbitration), *aff'g Lynch v. Oliver*, 2016 WL 344980 (S.D.N.Y. Jan. 27, 2016).

The terms of the Release Agreement make clear that at least some claims may be arbitrable. By erroneously finding that the Release Agreement could not supersede at least some portions of the SPA, the district court incorrectly determined that the TRGI Plaintiffs failed to demonstrate a likelihood of success on the merits. Accordingly, on remand, the district court should determine the scope of the Release Agreement and thereby consider which claims are arbitrable in the first instance for purposes of ruling on the preliminary injunction.[3]

2. <u>Irreparable Harm</u>

The district court's reasoning as to why the TRGI Plaintiffs could not be irreparably harmed by a denial of an injunction failed to properly consider this Circuit's case law. The district court offered no explanation for why irreparable harm did not exist in this instance beyond rejecting the proposition that being

---

[3] The TRGI Plaintiffs also sought declaratory judgment below on the issue of whether certain claims were released from the SPA in the subsequent Release Agreement. It appears the district court did not enter an order on this claim or expressly address it in its oral pronouncement. While this claim is not before this Court, we note that our precedent and analysis as to the likelihood of success on the merits will likely impact the district court's substantive considerations of a declaratory judgment claim.

17

forced to arbitrate an inarbitrable claim necessarily constitutes irreparable harm. Special App'x at 30 ("The notion that being subject to an arbitration at this early phase is such a burden that it should be forbidden on its own, that is simply a burden that common sense cannot sustain.").

Although this Court has not endorsed a per se rule that being forced to arbitrate an inarbitrable claim is irreparable harm, it squarely held in *Maryland Casualty Company v. Realty Advisory Board on Labor Relations* that forced arbitration of inarbitrable claims may constitute irreparable harm when the arbitration is one "for which any award would not be enforceable" and for which "the time and resources . . . expend[ed] in arbitration is not compensable by any monetary award of attorneys' fees or damages." *See Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997).

Our holding in *Maryland* created an avenue for parties to establish irreparable harm related to forced arbitration of inarbitrable claims, but it was largely limited by our acknowledgment that "an injury that is *adequately compensated by a monetary award* is not considered 'irreparable.'" *Id.* (emphasis added) (concluding that there was irreparable harm where "the time and resources Maryland would expend in arbitration [were] *not compensable by any monetary*

18

*award of attorneys' fees or damages* pursuant to the provisions of the Agreement or the Arbitration Act" (emphasis added)); *cf. Emery Air Freight Corp. v. Loc. Union 295*, 786 F.2d 93, 100 (2d Cir. 1986) (holding that "as the preferred method for resolving labor disputes, arbitration by itself imposes no [irreparable] injury to the resisting party, except perhaps in 'extraordinarily rare' circumstances"); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Therefore, rather than focusing on the potential inarbitrable nature of the claim, the critical issue for the Court to consider is whether the proffered injury is compensable—specifically here, whether attorneys' fees and arbitration costs are available to a prevailing party.

Accordingly, on remand, the district court must consider in the first instance whether the harm the TRGI Plaintiffs identify is a harm for which they would adequately be compensated if they are in fact correct as to the inarbitrable nature of any of the claims in dispute. On the record before us, it does not appear that the district court acknowledged or otherwise considered the compensability of

19

time and resources expended on arbitration if the TRGI Plaintiffs are made to arbitrate inarbitrable claims. Given that the district court will be reconsidering the TRGI Plaintiffs' arguments related to the likelihood of success on the merits, which may impact the analysis under the irreparable harm prong, we refrain from weighing in further on this element of the preliminary injunction analysis beyond our clarification of our precedent in *Maryland*.[4]

**III.    Conclusion**

For the foregoing reasons, we **VACATE** the order of the district court denying the TRGI Plaintiffs' motion for preliminary injunction and **REMAND** this case to the district court for further proceedings consistent with this opinion.

---

[4] The district court did not examine the last two preliminary injunction factors: the balance of hardships and public interest. Considering our conclusions and disposition as to the first two factors, we find it unnecessary to do so here. However, we encourage the district court to consider the remaining factors on remand, to the extent doing so would be appropriate or otherwise allow the district court to more easily resolve the matter before it.